304 A.2d 651.

EUGENE MOLINARI *vs.* SINCLAIR REFINING COMPANY.

MAY 14, 1973.

PRESENT: Robets, C. J., Paolino, Powers and Kelleher, JJ.

ROBERTS, C. J.   This is an action brought by the plaintiff, Eugene Molinari, to recover damages for injuries sus-

tained in 1963 as a result of the alleged negligence of the defendant, Sinclair Refining Company.[1] The case was tried to a jury in the Superior Court, and at the conclusion of the introduction of evidence, the defendant's motion for a directed verdict was granted by the trial justice. The plaintiff is now in this court prosecuting an appeal.

It appears that in 1963 Grace Painting Company, a New York corporation, entered into a contract with Richfield Oil Company, predecessor to the present defendant, to paint several oil storage tanks located at its Providence plant. The plaintiff, a working painter who is also president of Grace Painting Company, arrived in Providence with a crew of three men in July of 1963 for the purpose of executing a contract. After the crew had painted several storage tanks on property of defendant located on Terminal Road, plaintiff and his assistants went to other properties of defendant located on Allens Avenue for the purpose of painting tank No. 13.

Tank No. 13 was a high, dome-shaped tank commonly referred to as an "umbrella" type tank, and obviously, to paint it, some sort of scaffolding would be required. The plaintiff and his assistants rigged a so-called swinging scaffold for such use and secured it by lashing it into an eyebolt atop tank No. 13. Subsequently, on August 6, the eyebolt to which the scaffolding was rigged broke, and the scaffolding, along with plaintiff, fell to the ground.

It appears from plaintiff's testimony that on the morning of August 6, on arriving at the site of tank No. 13, he reported to defendant's superintendent, a Joseph Fagan. However, plaintiff conceded that he did not discuss the condition of the tank with Fagan or make inquiry as to

---

[1]This action was commenced before the adoption of the Rules of Civil Procedure of the Superior Court of Rhode Island in an action of trespass on the case for negligence. A prior trial of this case, started on January 14, 1969, was passed by the trial justice on January 21, 1969.

how the painting should be carried on. He further concedes that he made no inquiry as to whether the roof of the tank or the eyebolt had been inspected at any time prior to his arrival. It was apparent that he simply went ahead to prepare the necessary scaffolding for painting the tank.

The plaintiff and one of his men went to the roof of the tank and examined the eyebolt, saw that it had been rusted, and went ahead to test it on their own. To do this, they shook the eyebolt but observed nothing wrong with it other than its rusty condition. Thereupon, they decided to use it to support the scaffolding that they intended to erect. They did this by attaching a shackle to the eyebolt and passing a rope through the shackle, which in turn would support the scaffolding. The plaintiff testified that the scaffolding was then raised a short distance from the ground, and two of his men, who together weighed approximately 390 pounds, jumped up and down on the scaffolding to make sure that it would carry the load. There was testimony that this was the customary method for testing the safety of scaffolding in the trade. After this test was completed, plaintiff returned to the top of the tank and again examined the eyebolt. So far as he could see, it was neither twisted nor bent, only rusty. Thereupon, plaintiff began to use the scaffolding, which fell to the ground later on in the day when the eyebolt broke.

In granting the motion for direction, the trial justice took the view that the controlling issue was whether defendant knew, or by an exercise of reasonable prudence would have known, that the eyebolt was inherently defective. In his decision he said that the only question was "* * * whether or not this inherent defect in this eyebolt could have been discovered by the exercise of reasonable diligence, and our Supreme Court says that is the only duty upon the Defendant to exercise ordinary care to inspect the premises and anything that could be detected by the eye

of an ordinary individual they are bound by it. Anything that could be detected by the eye of an expert they are not bound by."

Testimony of one witness, a metallurgical engineer, read into the record, indicated that his examination of the bolt after the fracture revealed inherent defects in the steel. He testified that such defects would not be visible to the eye until after the fracture had occurred, that is, they would not be disclosed by a visual inspection of the bolt prior to its breaking.

Were this the only evidence in the record explanatory of the nature of the defect in the bolt, the trial justice's decision granting the motion to direct would obviously be correct. *See Antonakos* v. *Providence Institution for Savings,* 94 R. I. 382, 181 A.2d 101 (1962), where we held that generally the owner of premises upon which a business invitee was injured cannot be charged with constructive notice of an unsafe condition that would not be disclosed by a reasonably effective visual inspection.

It is our opinion, however, that the trial justice inadvertently overlooked another issue raised by the evidence. The duty of a landowner to exercise reasonable care for the safety of business invitees is comprehensive. In appropriate circumstances, actionable negligence may be found where a reasonably prudent person would have foreseen that a dangerous condition existing on the premises could cause injury to business invitees. The failure to apprehend that a dangerous condition exists on the premises where a reasonably prudent person would have apprehended the danger will give rise to a cause of action. *Radigan* v. *W. J. Halloran Co.,* 97 R. I. 122, 196 A.2d 160 (1963); *Lance* v. *Senior,* 66 Ill.App.2d 41, 213 N.E.2d 616 (1966); *Segerman* v. *Jones,* 256 Md. 109, 259 A.2d 794 (1969).

Clearly, while the owner of such premises is not an insurer of the invitee's safety, it is his duty to exercise rea-

sonable care to determine whether the premises are in a safe condition for the invitee to do those things for which the invitation was issued. *Dawson* v. *Rhode Island Auditorium, Inc.*, 104 R. I. 116, 242 A.2d 407 (1968); *Lapierre* v. *Greenwood*, 85 R. I. 484, 133 A.2d 126 (1957).

The thrust of plaintiff's contention is that defendant either knew or, upon reasonable inspection, would have known that the bolt, attached as it was to the roof of the tank, created a dangerous condition, being inadequate to support the weight of the painters' scaffolding. From this he argues that defendant, acting reasonably, should have foreseen that plaintiff, when painting the tank, would use the eyebolt at the top for the purpose of supporting scaffolding and, therefore, defendant was under a duty either to correct the dangerous condition or to warn plaintiff of the risk of injury that would result from such use.

It is well established in this state that the rule governing the action of a trial justice on a motion to direct a verdict contemplates that he will not take a case from the jury on such a motion without first going as far on the questions of credibility and weight in favor of the adverse party as a jury could go were the case submitted to it. The court must view in the light most favorable to the adverse party all the evidence and the reasonable inferences to be drawn therefrom, and a verdict should not be directed unless the only reasonable finding or inference that can be made is against the adverse party. Considerations of credibility or weight of the evidence are not for the court on such a motion, and, in considering the evidence, it must consider all the evidence submitted in a light most favorable to the party opposing the motion. *Aldcroft* v. *Prudential Ins. Co. of America*, 104 R. I. 240, 243 A.2d 115 (1968); *Sullo* v. *DiLorenzo*, 104 R. I. 188, 243 A.2d 113 (1968).

There was substantial testimony as to the inadequacy of the eyebolt to support the weight of scaffolding ordi-

narily used by painters in working on such tanks. Experts testified that because of the dimensions, the shape, the manufacture, and the tensile strength of this particular eyebolt, it was inadequate to carry such weight. There was also testimony that the eyebolt was affixed to the top of the tank as well as testimony that generally some device or appurtenance is attached to the top of such tanks for the purpose of using it to rig scaffolding. There was some testimony that the particular type of eyebolt under consideration here was at one time placed on such tanks to be used by workmen erecting the tank and that such an eyebolt was never intended to support painters' scaffolding. Other witnesses of long experience in the erection and maintenance of storage tanks testified that no experienced painter would put such an eyebolt to the use to which plaintiff put it.

When this evidence is viewed in the light most favorable to the plaintiff, the adverse party, it is clearly susceptible of reasonable inferences that the defendant knew or, by an exercise of reasonable inspection, would have known that the eyebolt attached to the top of the tank created a dangerous condition, and it reasonably should have foreseen the plaintiff's use thereof in painting the tank, the purpose for which the defendant had invited him into the premises. In such circumstances, the defendant clearly would have been under a duty to warn the plaintiff of the dangers of such a use. We are constrained to hold, then, that the trial justice erred in granting the defendant's motion for a directed verdict.

The appeal of the plaintiff is sustained, the judgment appealed from is reversed, and the cause is remanded to the Superior Court for further proceedings consistent with this opinion.

Mr. Justice Powers participated in the decision but retired prior to its announcement. Mr. Justice Joslin and Mr. Justice Doris did not participate.

*Edward I. Friedman,* for plaintiff.

*Bernard F. McSally,* for defendant.