Bryan D. KONAR

v.

PFL LIFE INSURANCE COMPANY

v.

National Development Asset
Management of New
England

v.

Dennis DePalma, Alias, and Rhode
Island Bureau of Investigation
and Protection, Ltd.

No. 2002–291–Appeal.

Supreme Court of Rhode Island.

Jan. 9, 2004.

Peter Brent Regar, for Plaintiff.

Amy Parker, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY and SUTTELL, JJ.

## OPINION

PER CURIAM.

The plaintiff, Bryan D. Konar (plaintiff), appeals from a Superior Court summary judgment in favor of the defendant, PFL Life Insurance Company (PFL or defendant). This case came before the Supreme Court for oral argument on September 24, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and proceed to decide the appeal at this time. We affirm the judgment of the Superior Court.

## I

### Facts and Travel

In June 1995, plaintiff was attacked just outside the Newport Mall, which defendant owned. As he was leaving the mall, Dennis DePalma (DePalma) attacked and injured plaintiff. According to plaintiff,

defendant's failure to provide adequate security caused his injuries.

The defendant contracted with National Development Asset Management of New England (National Development) to be its on-site manager. In turn, National Development contracted with the Rhode Island Bureau of Investigation and Protection, Ltd. (RIBI) to provide security services at the mall.

The plaintiff brought suit against PFL for "negligent failure to provide security." The defendant filed a third-party complaint against National Development, which in turn asserted a fourth-party complaint for contribution and indemnification against DePalma and against RIBI. RIBI asserted a cross-claim against DePalma for contribution and indemnification. The motion justice granted defendant's motion for summary judgment because RIBI was responsible for patrolling the mall when defendant was attacked. As such, and pursuant to the independent contractor rule, any liability on the part of RIBI could not be imputed to defendant. The plaintiff timely appealed.

## II

### Summary Judgment

■ It is well settled that this Court "reviews the grant of summary judgment on a *de novo* basis, applying the same standards as the trial court." *Sobanski v. Donahue*, 792 A.2d 57, 59 (R.I.2002). "[A] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I. 1996). Rather, the opposing party has an affirmative duty to set forth, by affidavits or otherwise, specific facts that demonstrate the existence of a genuine issue of material fact. *Bourg v. Bristol Boat Co.*, 705 A.2d 969, 971 (R.I.1998). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, no material questions of fact exist and the moving party is entitled to judgment as a matter of law. *Woodland Manor III Associates v. Keeney*, 713 A.2d 806, 810 (R.I.1998) (citing *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I.1996)).

■ Because RIBI provided the security services, alleged to be negligent, we consider whether that negligence, if any, may be imputed to defendant. Pursuant to the independent contractor rule, a party who employs an independent contractor generally will not be liable for the negligence of that contractor. *Bromaghim v. Furney*, 808 A.2d 615, 617 (R.I.2002) (per curiam) (citing *East Coast Collision & Restoration, Inc. v. Allyn*, 742 A.2d 273, 275 (R.I.1999) (per curiam)). It is undisputed that RIBI is an independent contractor. Thus, under that general rule, even if RIBI were negligent, defendant would not be liable for plaintiff's injuries.

■ The independent contractor rule, however, is not without exceptions. For example, a party may be vicariously liable for the negligent acts of its independent contractor if the party retained an independent contractor to carry out a duty to the public that is set out in a statute or ordinance. *See Webbier v. Thoroughbred Racing Protective Bureau, Inc.*, 105 R.I. 605, 611–12, 254 A.2d 285, 289 (1969). The plaintiff, however, does not cite any statute or ordinance that imposes a duty on defendant to provide security at the mall. Additional exceptions are similarly inapplicable to this case. *See East Coast Collision & Restoration, Inc.*, 742 A.2d at 276 (recognizing an exception for contractors performing inherently dangerous work); *Bal-*

*let Fabrics, Inc. v. Four Dee Realty Co.,* 112 R.I. 612, 621–22, 314 A.2d 1, 6–7 (1974) (recognizing additional exceptions to the independent contractor rule when: (1) an independent contractor performs work that by its inherent nature is "likely to cause harm unless proper precautions are taken," and (2) "where the owner of a structure without formally accepting the contractor's work assumes practical control by appropriating it to the use for which it is built.").

Presumably aware that no recognized exceptions to the independent contractor rule apply, plaintiff asks this Court to adopt § 425 of the Restatement (Second) *Torts* (1965). Section 425 provides that:

"One who employs an independent contractor to maintain in safe condition land which he holds open to the entry of the public as his place of business * * * is subject to the same liability for physical harm caused by the contractors negligent failure to maintain the land * * * in reasonably safe condition, as though he had retained its maintenance in his own hands."

Section 425 is a policy-based rule of vicarious liability. When business owners invite members of the "public onto their premises for business purposes, [public] policy concerns counsel against allowing them to shield themselves from liability by hiring independent contractors." *Valenti v. Net Properties Management, Inc.,* 142 N.H. 633, 710 A.2d 399, 401 (1998).

Based on the text of § 425 of the Restatement, it is clear that this section applies only to premises liability claims. Under Rhode Island premises liability law, landowners must "exercise reasonable care for the safety of persons reasonably expected to be on the premises * * * includ[ing] an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner

knows of, or by the exercise of reasonable care would have discovered, the dangerous condition." *Kurczy v. St. Joseph Veterans Association, Inc.,* 820 A.2d 929, 935 (R.I. 2003) (quoting *Tancrelle v. Friendly Ice Cream Corp.,* 756 A.2d 744, 752 (R.I.2000)). Although a landowner may delegate the duty of performance to an independent contractor, pursuant to § 425 of the Restatement, "he cannot thereby avoid [liability for] * * * non-performance of the duty." *Rowley v. Mayor and City Council of Baltimore,* 305 Md. 456, 505 A.2d 494, 499 (1986).

The plaintiff's complaint, however, does not include a claim for premises liability. Pursuant to Rule 8(a)(1) of the Superior Court Rules of Civil Procedure, a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although a plaintiff's complaint need not "set out the precise legal theory upon which his or her claim is based," the complaint must give "the opposing party fair and adequate notice of the type of claim being asserted." *Hendrick v. Hendrick,* 755 A.2d 784, 791 (R.I.2000) (quoting *Bresnick v. Baskin,* 650 A.2d 915, 916 (R.I.1994) and *Haley v. Town of Lincoln,* 611 A.2d 845, 848 (R.I. 1992)). "The policy behind these liberal pleading rules is a simple one: cases in our system are not to be disposed of summarily on arcane or technical grounds." *Id.* (quoting *Haley,* 611 A.2d at 848).

Applying the liberal pleading rule, this Court has recognized the sufficiency of complaints even when the claims asserted within those complaints lack specificity. For example, in *Hendrick,* this Court held that the Superior Court erred by failing to consider a party's pleadings under G.L. 1956 §§ 7–1.1–90 and 7–1.1–90.1. *Hendrick,* 755 A.2d at 790–91. That case involved a dispute over a closely held corporation. "Section 7–1.1–90, entitled '[j]u-

risdiction of the court to liquidate assets and business of corporation,' allows corporate shareholders to seek relief from 'illegal, oppressive, or fraudulent' acts of those controlling the corporation." *Hendrick*, 755 A.2d at 790. Under § 7–1.1–90.1, a corporation may avoid dissolution by buying out an aggrieved shareholder's stock. *Hendrick*, 755 A.2d at 790. The plaintiff's complaint in *Hendrick* alleged conduct "that was 'illegal, oppressive or fraudulent' and demanded relief pursuant to §§ 7–1.1–90 and 7–1.1–90.1." *Hendrick*, 755 A.2d at 791. This Court noted that, although the complaint "could have been framed with more particularity" the plaintiff provided adequate notice of the type of claim that was asserted. *Id.*

Similarly, in *Butera v. Boucher*, 798 A.2d 340, 353 (R.I.2002), this Court held that the plaintiff's complaint adequately asserted a claim for abuse of process. Although that claim was "embedded in the malicious-prosecution count of the complaint," *id.*, the complaint specifically alleged the defendant's "actions were wanton, reckless, willful, malicious prosecutions and abuses of process." *Id.* at 352 n. 2. Thus, the defendants were given "more than sufficient notice of the type of claim" that was asserted against them. *Id.* at 353.

The plaintiff's complaint in this case, however, is substantially less specific than the complaints at issue in *Hendrick* and *Butera*. The complaint at issue here broadly states that "a male assailant, known to the defendant * * * to pose an immediate threat of bodily harm to the plaintiff was allowed to remain on the [mall] premises" and that plaintiff "was physically beaten, assaulted and battered by the above-described assailant upon the premises of the defendant." The complaint further alleges that plaintiff's injuries were "a direct and proximate result of,

but not limited to, the defendant's, its' [*sic*] agents, servants and/or employees [*sic*] negligent failure to provide security, recklessness, carelessness, misfeasance and/or malfeasance." The plaintiff's complaint does not mention the phrase "premises liability." Furthermore, unlike the complaint in *Hendrick*, which specifically referred to the key words necessary to obtain relief under § 7–1.1–90, the complaint here does not mention the underpinning of a premises liability claim: the duty to maintain the premises in a reasonably safe condition. *Tancrelle*, 756 A.2d at 752. Nor is a premises liability claim embedded in another claim in the pleading, as was the case in *Butera*.

■■■■ The majority of this Court is not willing to overlook the overly broad, scatter-shot style of pleading on the part of plaintiff in this case to allow him to proceed on a premises liability claim. By generally mentioning the word "negligence" in a complaint, without alleging breach of a particular duty, it is not clear whether a defendant must defend a general negligence claim, a premises liability claim, or a claim for negligent supervision or hiring. In light of plaintiff's allegation of "negligent failure to provide security," we understand plaintiff's complaint in this case as only a general claim for negligence. To succeed on a general claim for negligence, plaintiff must demonstrate that defendant did not act as a "reasonably prudent [person] would under the circumstances." *Vanvooren v. John E. Fogarty Memorial Hospital*, 113 R.I. 331, 335, 321 A.2d 100, 102 (1974) (holding that, to avoid being liable for negligence, "one must act as a reasonably prudent [person] would under the circumstances"); *Breaux v. State*, 326 So.2d 481, 483–84 (La.1976) (recognizing that, in a negligence claim, a security guard will be held to the standard of other reasonably prudent security

guards). Thus, to prevail under that theory of liability, plaintiff would have to demonstrate the security guard was negligent by failing to act as a reasonably prudent security guard would have acted under the circumstances, imputing that negligence to defendant.[1] Conversely, to succeed on a claim for premises liability, plaintiff would have had to demonstrate that RIBI's negligence constituted a direct failure by defendant to fulfill its duty to provide safe premises.

 Moreover, in granting summary judgment in favor of defendant, the motion justice commented, "this complaint is not one sounding in * * * premises liability which would warrant a different analysis." He then proceeded to grant summary judgment in favor of defendant based on the independent contractor rule as it applies to general negligence cases. Thus, the motion justice neither granted nor denied plaintiff's claim under this state's premises liability law. The plaintiff does not challenge the motion justice's classification of the claim as a general claim for negligence. This failure to challenge the motion justice's ruling is deemed conclusive on this issue. Although our review of summary judgment is *de novo*, it is not without limits. The taking of an appeal does not provide the appealing party with a second bite at the apple. For example, a party may not assert an argument on appeal that was not presented below. *Allstate Insurance Co. v. Lombardi*, 773 A.2d 864, 871 (R.I.2001). Similarly, this Court will only review evidence that was before the motion justice. *Id.* at 870–71. Without a challenge to the motion justice's failure to rule on a premises liability claim in this case, we limit our review to whether the trial justice erred in granting summary judgment on a general claim for negligence.

We are unwilling to excuse plaintiff's failure to expressly challenge the motion justice's ruling that this is not a premises liability case. This Court is not willing to look past the ambiguous state of the pleadings, the motion justice's specific conclu-

---

1. The dissent takes the position that the complaint adequately included a claim for premises liability. Although we respect and acknowledge the points raised by the dissent, especially in light of liberality in this state's rules of pleading, we believe this complaint is so inartfully drafted as to be beyond the pale of what liberality allows. The dissent specifically refers to a portion of plaintiff's complaint where it is alleged that defendant knowingly allowed a dangerous individual to remain on its premises, thereby causing plaintiff's injuries. According to the dissent, this allegation is similar to the duty recognized by this Court in *Volpe v. Gallagher*, 821 A.2d 699 (R.I.2003), and, thus, provided sufficient notice that a premises liability claim was being asserted. In *Volpe*, the plaintiffs brought suit against the defendant after the defendant's mentally ill adult son shot and killed the defendant's neighbor. The gun used in the killing had been stored on the defendant's property. *Id.* at 703. The evidence indicated that the defendant had control over her son's ability to store the deadly weapon at her home and, given the "nature of his mental illness, she should have appreciated the necessity for exercising such control." *Id.* at 715. Thus, recognizing that landowners have a duty to prevent third persons whom they allow to use their property from causing intentional bodily harm or creating an unreasonable risk of such harm to others, this Court held that the defendant could be held civilly liable for her negligence. *Id.* at 709. In contrast, this case concerns the possible duty of a commercial, rather than residential, landowner. Also, the defendant's liability in *Volpe* was predicated on her ability to control the conduct of a third party. *Id.* at 718. Here, there is no allegation that defendant had any control over instrumentalities that may have been used in the attack on plaintiff or over the attacker himself. Because *Volpe* is not directly applicable to this case, any similarity in phrasing between plaintiff's complaint and the duty recognized in *Volpe* does not change our conclusion that plaintiff's complaint failed to include a claim for premises liability.

sion that plaintiff did not assert a premises liability claim and the fact that defendant, on appeal, relies on the fact that the motion justice analyzed this case only under a general negligence standard. Based on these facts, this Court will not *sua sponte* apply premises liability law to review a summary judgment on a completely distinct negligence claim. Based on plaintiff's theory of the case, the only issue is whether defendant can be responsible for RIBI's allegedly negligent security lapse; not whether RIBI's alleged security lapse constitutes a breach of defendant's duty to provide reasonably safe premises. *Tancrelle*, 756 A.2d at 752. Because § 425 of the Restatement does not affect the independent contractor rule as it pertains to a general negligence claim, our decision to adopt that section would have no bearing on plaintiff's appeal in this case. Accordingly, even if we were to adopt § 425, defendant would not be liable for RIBI's negligent security service "as though [it] had retained [the mall's] maintenance in [its] own hands." Restatement (Second) *Torts* § 425.

Despite this Court's grave concerns over landowners' ability to escape liability for unsafe conditions on their premises through the hiring of independent contractors, we decline to adopt § 425 of the Restatement at this time for the reasons set forth above. Given the right facts and circumstances, which are not present here, this Court may revisit the issues of § 425 as they pertain to premises liability.

## Conclusion

For the reasons indicated herein, the plaintiff's appeal is denied and dismissed

and the judgment of the Superior Court is affirmed. The papers of the case shall be remanded to Superior Court.

FLANDERS, Justice, with whom Justice FLAHERTY joins, dissenting.

We respectfully dissent. We do not agree that the plaintiff's complaint fails to include a claim for premises liability against the defendant PFL Life Insurance Company (PFL). According to Black's Law Dictionary 1199 (7th ed. 1999), "premises liability" is defined as "[a] landowner's * * * tort liability for conditions or activities on the premises." Thus,

> "premise-liability law in Rhode Island imposes an affirmative duty upon owners and possessors of property: 'to exercise reasonable care for the safety of persons reasonably expected to be on the premises * * * includ[ing] an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition.'" *Kurczy v. St. Joseph Veterans Association, Inc.*, 820 A.2d 929, 935 (R.I.2003) (quoting *Tancrelle v. Friendly Ice Cream Corp.*, 756 A.2d 744, 752 (R.I. 2000)).

Here, the complaint alleged that defendant PFL owned the Newport shopping mall. It also alleged that PFL negligently provided security for these premises when it knowingly allowed a dangerous individual to remain there, and that this asserted negligence was the proximate cause of plaintiff's injuries.[2] Just last term we

---

2. The specific allegations in plaintiff's complaint were, in pertinent part, as follows:

"3. At all times pertinent to this complaint, Defendant was the owner of certain real property, with the buildings, improvements[,] common areas and premises known as the Newport Mall, located in the City of Newport[,] County of Newport, State of Rhode Island, and identified as Lot 75 on Newport Tax Assessor's Plat 4.

" * * * * *

"recognize[d] that the duty of landowners and possessors of property to prevent third persons whom they permit to use their property from intentionally harming or creating an unreasonable risk of bodily harm to others is an exception to the general rule that 'a landowner has [no] duty to protect another from intentional criminal acts of third parties which take place on adjacent property or the public way.'" *Volpe v. Gallagher*, 821 A.2d 699, 715 (R.I. 2003) (quoting *Ferreira v. Strack*, 636 A.2d 682, 686 (R.I.1994)). If a residential landowner, as in *Volpe*, can be found liable for knowingly allowing individuals to remain on the property in question and to engage in dangerous activities thereon that create unreasonable risks of injury for third parties, then *a fortiori* commercial landowners such as PFL, who invite the general public onto their premises, can be held liable for engaging in such conduct. Thus, in our judgment, this complaint—even though it never used the words "premises liability"—adequately alleged a breach of defendant's duty as owner of a Newport shopping mall to provide safe premises for members of the invited public. In other words, contrary to the "parenthetical" determination of the motion justice on this subject ("[p]arenthetically * * * this complaint is * * * not one sounding in * * * premises liability"), we believe that plaintiff's complaint did, in fact, sound in premises liability. Significantly, we are never told why the motion justice reached a contrary conclusion. And even though the majority attempts to draw a significant distinction between what it calls "a general claim for negligence" and a premises-liabil-

ity case, we fail to fathom the attempted distinction in this case between "demonstrat[ing] the security guard was negligent by failing to act as a reasonably prudent security guard would have acted under the circumstances, imputing that negligence to [PFL]," and "demonstrat[ing] that RIBI's [the security-guard firm's] negligence constituted a direct failure by [PFL] to fulfill its duty to provide safe premises." Respectfully, we are of the opinion that such a distinction (if it exists at all) is one that has no legal significance whatsoever in this case because in either situation the property owner's duty to the injured mall patron devolves from his status as a property owner, not from characterizing the claim as one sounding in general negligence, in negligently providing security, or in premises liability.

Moreover, pursuant to Rule 8(a) of the Superior Court Rule of Civil Procedure, no magic words are required to state a claim; rather, all that is required of a complaint is "a short and plain statement of the claim showing that the pleader is entitled to relief, and * * * a demand for judgment for the relief the pleader seeks." A plaintiff is not required "to plead the ultimate facts that must be proven." *Haley v. Town of Lincoln*, 611 A.2d 845, 848 (R.I. 1992). Most significantly, a plaintiff is not required, "to set out the precise legal theory upon which his or her claim is based." *Id.* What is required "is that the complaint gives the opposing party fair and adequate notice of the type of claim being asserted." *Id.* "[G]reat generality in such a statement

"6. On or about June 13, 1995, a male assailant, known to the defendant, its agents, servants and/or employees to pose an immediate threat of bodily harm to the plaintiff was allowed to remain on the above described premises.
" * * * * *

"8. The injuries sustained by the plaintiff were a direct and proximate result of, but not limited to, the defendant's, its' [*sic*] agents, servants, and/or employees [*sic*] negligent failure to provide security, recklessness, carelessness, misfeasance and/or malfeasance without any negligence on the part of the plaintiff."

is allowed" so long as the complaint gives fair notice to the defendant of the claim. *Id.* In the specific context of this case, "the invitee must allege and prove some specific act * * * by the owner which amounts in the law to a breach of duty owed to him; [and] that the breach of duty was the proximate cause of the injury sustained * * *." *Dawson v. Rhode Island Auditorium, Inc.*, 104 R.I. 116, 124–25, 242 A.2d 407, 413 (1968).

In our judgment, this complaint, although perhaps less than ideally clear in its draftsmanship, sufficiently alleged that defendant mall owner breached a duty to provide adequate security to invitees such as plaintiff while they were present on the mall's premises, and that this breach supposedly caused plaintiff's injury. Thus, the mere fact that the complaint does not mention the phrase "premises liability" or the landowner's legal duty to maintain the premises in a reasonably safe condition for the invited public should not be deemed to constitute a fatal deficiency in a notice-pleading jurisdiction such as Rhode Island.

This is so because—as a matter of law, and regardless of whether the plaintiff includes such an allegation in the complaint—"a landowner [or possessor of property] has a duty to exercise reasonable care for the safety of persons reasonably expected to be on the premises * * *." *Tancrelle*, 756 A.2d at 752; *Dawson*, 104 R.I. at 124, 242 A.2d at 413. *See also Gormley v. Vartian*, 121 R.I. 770, 780, 403 A.2d 256, 261 (1979) (a lessor who maintains control over common areas has a duty of reasonable care to those reasonably expected to be on the premises of the common area). "[A] landowner owes * * * a business invitee a duty to use reasonable care to keep [its] premises in a safe condition for the purposes of the invitation * * *." *Dawson*, 104 R.I. at 124, 242 A.2d at 413. This legal duty exists

because a landowner or possessor who is in control of property is in the best position to protect against harm caused by the use of the property or by any dangerous condition that may arise there. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 57 at 386 (5th ed. 1984).

This duty to provide safe premises for invitees is one that is comprehensive in scope. *Molinari v. Sinclair Refining Co.*, 111 R.I. 490, 493, 304 A.2d 651, 653 (1973). "In appropriate circumstances, actionable negligence may be found where a reasonably prudent person would have foreseen that a dangerous condition existing on the premises could cause injury to business invitees." *Id.* Thus, although the owner of such premises is "not an insurer of the invitee's safety, * * * [it must] exercise reasonable care to determine whether the premises are in a safe condition for the invitee to do those things for which the invitation was issued." *Id.* at 493–94, 304 A.2d at 653.

The legal question posed by this case is whether a landowner's duty to use reasonable care to protect business invitees encompasses a duty, under certain circumstances, to provide protection against or security from the intentional criminal acts of third persons that occur on the premises. To date, this Court has not addressed that precise issue. *But compare Ferreira*, 636 A.2d at 685–86 (holding that a landowner has no duty to protect another from intentional criminal acts of third parties that take place on an adjacent public way) *with Volpe*, 821 A.2d at 718 (holding that the residential landowner breached a duty to control unreasonably dangerous activities on her property when she allowed her adult son, who suffered from a delusional mental illness, to keep guns on the property and he used one of them to shoot their neighbor).

Many other jurisdictions, however, have held that a commercial property owner's failure to protect an invitee from the criminal acts of third persons or the failure to provide "security" to a business invitee may, under certain circumstances, fall within the duty of the landowner or possessor of property to keep the premises reasonably safe for the purposes of the invitation. *E.g., Taylor v. Centennial Bowl, Inc.,* 65 Cal.2d 114, 52 Cal.Rptr. 561, 416 P.2d 793, 797 (1966); *Stewart v. Federated Department Stores, Inc.,* 234 Conn. 597, 662 A.2d 753, 761–62 (1995); *Jardel Co. v. Hughes,* 523 A.2d 518, 525 (Del. 1987); *Lau's Corp. v. Haskins,* 261 Ga. 491, 405 S.E.2d 474, 476–77 (1991); *American National Insurance Co. v. Hogue,* 749 So.2d 1254, 1258 (Miss.Ct.App.2000); *Nallan v. Helmsley–Spear, Inc.,* 50 N.Y.2d 507, 429 N.Y.S.2d 606, 407 N.E.2d 451, 457–58 (1980); *McClung v. Delta Square Limited Partnership,* 937 S.W.2d 891, 905 (Tenn.1996). *See Whittaker v. Saraceno,* 418 Mass. 196, 635 N.E.2d 1185, 1187 (1994); *Walls v. Oxford Management Co.,* 137 N.H. 653, 633 A.2d 103, 104 (1993); *see also* Restatement (Second) *Torts* § 344 (1965).[3]

In this case, plaintiff's claim against PFL for negligent failure to provide security was not pled in a vacuum. As the complaint alleges, it was PFL, *in its capacity as owner of the premises,* that, through its "agents, servants, and/or employees" is alleged to have negligently failed to provide security by knowingly allowing "a male assailant * * * known * * * to pose an immediate threat of bodi-

ly harm to the plaintiff * * * to remain on the above described premises." Thus, given these allegations, the issue of whether PFL as the owner of the mall can be held liable for RIBI's allegedly negligent security lapse is no different from the issue of whether RIBI's alleged security lapse constituted a breach of defendant's duty to provide safe premises. In the context of this case, such an attempted distinction is one that is without any legal significance.

And even though it is true that plaintiff does not explicitly challenge on appeal the motion justice's conclusory statement, when ruling on the summary-judgment motion, that "[p]arenthetically * * * this complaint is not one sounding in * * * premises liability," we believe that plaintiff implicitly does so by contending that PFL should not be allowed to evade its duty to provide safe premises for its business invitees merely by hiring one or more independent contractors to manage the property or to arrange for security on the premises. Thus, in its argument to this Court, plaintiff contends that "PFL's duty to maintain the Mall in a reasonably safe condition was a non-delegable duty," and that "landowners have a duty to exercise reasonable care for the safety of individuals reasonably expected to be on their premises." Indeed, plaintiff's whole argument on appeal turns on its contention that PFL owed him a duty in its capacity as the owner of the shopping mall that could not be delegated to an independent contractor. Thus, through this argument, plaintiff necessarily challenges the motion justice's conclusion that this action was not

---

**3.** Restatement (Second) *Torts* § 344 (1965) provides as follows:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally

harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

one sounding in premises liability. And even though PFL on appeal may be relying on the fact that the motion justice analyzed this case only under a general negligence standard, plaintiff convincingly assails the motion justice for doing so because a fair reading of the complaint shows that the negligence claim alleged is one against the owner of a retail-shopping mall, which opened these premises to the general public.

On the merits of this legal issue, we are of the opinion that the independent-contractor rule should not apply to commercial property owners such as this defendant who invite members of the public on to their premises. When an owner of commercial property has a duty, either by statute or under common law, to provide reasonably safe premises for the public to use, it cannot evade this duty simply by contracting with a third party. *See Moseley v. Fitzgerald*, 773 A.2d 254, 258 (R.I. 2001) (per curiam) ("The basis for imposing a duty of care in premises liability cases is that the defendants must have possession and control over the premises."). In *Moseley*, we held that a joint owner of the commercial property in question (a utility pole), could not immunize itself from liability to a member of the public who was injured in a collision with an attached guy wire merely because it had entered into a property maintenance agreement with another party. *Id.* Even though such contracts may entitle the party in control of the premises to obtain indemnification or contribution from the independent contractor, they should not insulate the controlling owner from liability with respect to the claims of members

of the public who are injured on the premises. *Id.* Otherwise, well-heeled landowners—including utilities, shopping-mall conglomerates, and insurance companies such as PFL who dabble in real estate as owners, investors, or entrepreneurs—could contract away their legal duty to provide safe premises by the simple expedient of entering into management, maintenance, and security agreements with fly-by-night "independent contractors" that may be here today but judgment-proof tomorrow.

This is why § 425 of the Restatement (Second) Torts precludes a landowner or possessor from insulating itself from liability to business invitees merely by delegating its property-related duties to an independent contractor.[4] This exception to the independent-contractor rule is linked expressly to the duty the landowner owes to its invitees to maintain the property in a reasonably safe condition. *See* Restatement (Second) *Torts* § 425 (1965). Without this exception, a landowner or business proprietor could effectively circumvent the duty of providing safe premises for the invited public, simply by contracting away its responsibilities to one or more relatively irresponsible or impecunious third parties.

Thus, we also would hold that the motion justice erred when he dismissed the case on summary judgment because of the independent-contractor rule—a legal doctrine that, in our opinion, was inapplicable to the alleged facts of this situation. The motion justice cited the case of *East Coast Collision & Restoration, Inc. v. Allyn*, 742 A.2d 273 (R.I.1999), to support his decision to apply the independent-contractor rule.

---

4. Restatement (Second) *Torts* § 425 (1965) provides as follows:

"One who employees an independent contractor to maintain in safe condition land which he holds open to the entry of the public as his place of business * * * is subject to the same liability for physical harm caused by the contractor's negligent failure to maintain the land or chattel in reasonably safe condition, as though he had retained its maintenance in his own hands."

But that case involved the claim of a commercial tenant against its landlord for property damage to a leased automotive body shop caused by an electrical fire. Unlike this case, it did not involve the personal-injury claim of a business invitee who was injured on premises that the owner or possessor had opened to the general public. Thus, *East Coast Collision* should not have controlled the result in this case.

To prevent a landowner from effectively evading its duty of providing safe premises for the invited public to use, we would adopt the principles set forth in the above-quoted §§ 425 and 344 of the Restatement and apply them to this case. Therefore, we would hold that the motion justice erred when he relied upon the independent-contractor rule to grant summary judgment to the mall owner, thereby insulating this landowner from liability for its alleged negligence in adequately safeguarding the premises that it invited the public to use.

In short, if ever there was a premises liability case, this is it. The alleged breach of this mall owner's asserted duty to provide security arose solely from its status as the owner of the premises in question. Because the premises were held open to the public for business and commercial purposes, the mall owner indisputably owed a duty to the members of that invited public, including plaintiff, to maintain the premises in a reasonably safe condition. And one aspect of that duty was for it to provide reasonable security for its invited patrons in light of the particular factual circumstances that existed at that mall. Applying the principles set forth in §§ 425 and 344 of the Restatement, we would hold that the mere fact that the mall owner entered into a contract with another firm to manage the mall—and that the manager thereafter arranged with yet another independent contractor for it to provide security services at the mall—did not serve to insulate the mall owner from liability vis-à-vis the negligence claims of members of the public, such as this plaintiff, who allege they were injured on the premises because of an unsafe condition there.

For these reasons, we would reverse, vacate the summary judgment that entered in favor of the mall owner, and remand this case for trial to determine whether, under the circumstances of this case, PFL breached the duty it owed to the plaintiff to maintain the premises in a reasonably safe condition.