DECISION
Before this Court is the Defendants' motion for summary judgment on all of Plaintiff's claims for relief. Plaintiff Mentor, Inc. (Mentor) formerly provided adult education services to the Providence School Department (PSD). The PSD did not renew its contract with Mentor for the 2001-02 school year. Mentor has alleged breach of contract, defamation, and *Page 2 
violation of its civil rights pursuant to 42 U.S.C. § 1983. The Defendants, who have all joined in the motion for summary judgment, are various persons associated with the PSD, the Treasurer of the City of Providence, and the City of Providence itself.
 I Facts and Travel
Through a verified complaint signed by its Chief Executive Officer, Mentor alleges that it began providing adult education services to the PSD in September 1996. (Second Am. Verified Compl. ¶ 4.) (Compl.) In the summer of 2000, Diana Lam was the Superintendent of the PSD. Mentor alleges that Ms. Lam questioned the funding level of adult education services in Providence, and began a concerted effort to remove Mentor as the provider of such services. Id. ¶¶ 10, 15.
In approximately June 2000, the school board of the PSD voted to continue providing funding for Mentor's services at previous levels, apparently against the recommendation of Superintendent Lam. Seeid. ¶¶ 20-21. Thereafter, Mentor claims that Ms. Lam "undertook a pattern and practice of conduct specifically to malign, defame, and otherwise expose" Mentor to ridicule. Id. ¶ 22. Ms. Lam allegedly hired a so-called "neutral" outside consultant, Defendant Yoel Camayd-Freixas, to conduct an evaluation of Mentor's services. Id. ¶¶ 10-11, 13. Mentor alleges that the "entire motive" for hiring the consultant "was to discredit Plaintiff . . . to accomplish [Superintendent Lam's] intended budget reduction." Id. ¶ 10. Ms. Lam also allegedly failed to disclose a prior professional relationship between her and Mr. Camayd-Freixas.Id. ¶¶ 24-25.
An evaluation of Mentor was prepared by Mr. Camayd-Freixas and presented to the school board of the PSD in May 2001. (Evaluation Summary.) Mentor claims that the May 2001 Evaluation Summary was replete with falsehoods which give rise to its defamation claim. *Page 3 
Following the presentation to the PSD school board, Mentor was informed that its contract would not be renewed for the 2001-2002 school year. Mentor claims that the non-renewal of its contract was in breach of an oral agreement to employ it throughout the 2001-2002 school year.
The PSD then issued a Request for Proposals (RFP) which sought a vendor for the adult education services previously provided by Mentor. The contract for those services was eventually awarded to a vendor other than Mentor. Mentor claims that the requirements in the RFP were designed specifically to exclude it from the bidding process in violation of its equal protection rights.
Mentor brought the present action against the Defendants for breach of contract, deprivation of civil rights, and defamation. It seeks compensatory damages, punitive damages, and attorneys' fees. The Defendants have now moved for summary judgment on each claim.
 II Standard of Review
Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law." Super. R. Civ. P. Rule 56(c). The Court "does not pass upon the weight or the credibility of the evidence," but instead it must consider the evidence "in a light most favorable to the party opposing the motion." Palmisciano v. Burrillville Racing Ass'n, 603 A.2d 317, 320
(R.I. 1992). The Court's role at this stage is only to identify pertinent factual disputes, and not to resolve those disputes.Rotelli v. Catanzaro, 686 A.2d 91 (R.I. 1996). For that reason, summary judgment is a remedy that should be cautiously applied. Id. However, "[i]f there are no material facts in dispute, the case is ripe for summary judgment." Richard v. Blue Cross Blue Shield, 604 A.2d 1260,1261 (R.I. 1992). *Page 4 
 III Contract for the 2001-2002 School Year
Mentor seeks damages for breach of an alleged contract to provide adult education services during the 2001-2002 school year. Mentor contends that at some point in the summer or fall of 2000, the PSD made an oral promise to utilize Mentor's services for both the 2000-2001 and 2001-2002 school years. (Compl. ¶ 4-6, 20.)[1] However, after the evaluation process that occurred in May 2001, the PSD sought bids for a new organization to replace Mentor. Therefore, Mentor was not paid, and its services were not utilized for the 2001-2002 school year.
A contract is simply a promise or set of promises which is enforceable by law. See Restatement (Second) of Contracts § 1 (defining contract as "a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty"). In this case, it is agreed that the PSD promised to hire Mentor for at least the 2000-2001 school year. The Court must determine whether that promise extended through the 2001-2002 school year.
The Defendants claim entitlement to summary judgment based upon a written agreement which was transmitted to Mentor in November 2000. (Aff. of Mark Dunham, ¶ 8 and Attachment E, June 28, 2007.) Mentor responds that the written agreement is not controlling because it was not signed by Mentor. The Defendants also assert the Statute of Frauds as a defense to Mentor's claim of an oral contract. Mentor responds that it does not apply in this case or, alternatively, that theories of "part performance" and promissory estoppel require enforcement of the alleged oral contract. *Page 5 
 A Effect of the Purchase Order Writing
The written agreement, which was executed by representatives of the PSD in November 2000, states that Mentor is to establish adult education services as provided in the grant submitted to Rhode Island Department of Education (RIDE) "for the 2000-01 school year." (Attachment E to Dunham Aff., June 28, 2007.) Elsewhere, the agreement states that it shall be in effect from "9/1/2000 to 8/31/2001." Finally, the agreement provides that it may be terminated "by either party at any time, with or without cause." Id. In its complaint, Mentor even refers to a contract that "by its terms expires on August 31, 2001," and "that its current contract . . . is set to expire on August 31, 2001," which suggests that it was aware of the November 2000 written agreement. (Compl. ¶ 9, 29.)[2]
This document alone is insufficient to entitle the Defendants to summary judgment, however, for two reasons. The agreement is not signed by Mentor, so it can fairly be disputed whether Mentor assented to the terms contained within it. Although Mentor made reference to the written agreement in its June 2001 report, this reference is not conclusive evidence that Mentor is bound by its terms.
More importantly, however, the Defendants have not demonstrated that this written agreement is a completely integrated writing. See
Restatement (Second) of Contracts, § 210(1) (defining a completely integrated agreement as an integrated agreement adopted as a "complete *Page 6 
and exclusive statement of the terms of the agreement"), § 209(1) (defining an integrated agreement as a "writing or writings constituting a final expression of one or more terms of an agreement"). The existence of a writing which applies to the 2000-2001 school year does not, by itself, eliminate the possibility that an oral agreement extended to the 2001-2002 school year.[3] A completely integrated writing would exclude such an oral contract because of the parol evidence rule, but it has not been shown that the written agreement is completely integrated.See id. § 213 (noting that, under one aspect of the parol evidence rule, a "binding completely integrated agreement discharges prior agreements to the extent that they are within its scope"). Therefore, the Defendants are not entitled to summary judgment on the basis of the written agreement.
 B Statute of Frauds
Because Mentor relies upon an oral promise occurring in the summer 2000 to employ Mentor for the 2001-2002 school year, the Defendants contend that the Statute of Frauds bars the contract claim. The operative provision states that
 "No action shall be brought:
 . . .
 (5) Whereby to charge any person upon any agreement which is not to be performed within the space of one year from the making thereof;
 . . .
 unless the promise or agreement upon which the action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him or her thereunto lawfully authorized." G.L. 1956 § 9-1-4. *Page 7 
The "one-year" provision does not prohibit contracts of uncertain duration; rather, it "covers only those contracts whose performance cannot possibly be completed within a year." See Restatement (Second)Contracts § 130, com. a. Since services extending through August 31, 2002 are incapable of being performed within one year of the summer of 2000, the alleged promise is within the Statute of Frauds.
The one-year provision serves an evidentiary function. See Restatement (Second) Contracts § 130 (stating that the provision was designed "not to trust to the memory of witnesses for a longer time than one year);see also Bourdon's, Inc. v. Ecin Indus., 704 A.2d 747, 755 (R.I. 1997) (noting that it is "well established that the purpose of the Statute of Frauds is to guard against perjury by one claiming under an alleged agreement") (internal quotations omitted). Without a writing, the Court may not enforce this type of contract because the possibility of perjury or faulty memory is too great.
Mentor alleges that since 1996, when their relationship began, "no written contract" was ever executed by the parties. Compl. ¶¶ 3-5. Therefore, they concede that there exists no written agreement between the parties with respect to the 2001-2002 school year. However, Mentor alleges that the relationship between the parties was governed by an "Adult Education Plan" (AEP) during the relevant time periods.Id. ¶ 4. Between 1996 and 2000, Mentor prepared an AEP annually.Id. ¶ 4-6. The PSD then adopted the document and submitted it to the RIDE. Id. Mentor relies on the most recent AEP for its two-year entitlement extending through August 31, 2002. Id. ¶ 9.
A promise need not be executed in a formal writing to satisfy the Statute of Frauds. See Restatement (Second) of Contracts § 133 (noting that "the Statute may be satisfied by a signed writing not made as a memorandum of a contract"). Rather, some "note or memorandum" of the *Page 8 
promise may be sufficient to fulfill the evidentiary functions of the statute. Generally, a writing is sufficient if it is "signed by or on behalf of the party to be charged" and the writing
 "(a) reasonably identifies the subject matter of the contract,
 (b) is sufficient to indicate that a contract with respect thereto has been made between the parties or offered by the signer to the other party, and
 (c) states with reasonable certainty the essential terms of the unperformed promises in the contract." Restatement (Second) of Contracts § 131.
According to Mentor, the June 2000 AEP describes "the rendering of services and the consideration to be paid therefore," and provided for payment of approximately $850,000 to Mentor during the 2000-2001 school year. Id. ¶¶ 4, 20.[4]
After reviewing this document, the Court finds that it does in fact meet the requirements of a note/memorandum under the Statute of Frauds. First, the AEP has been signed by Diana Lam in her capacity as Superintendent of Schools. The AEP also identifies with reasonable certainty the subject matter of the contract as the employment of Mentor to render adult education services to the PSD schools. Additionally, it states that there has been an agreement between Mentor and the PSD to this effect. Finally, the terms of the agreement are stated with reasonable certainty as they are detailed throughout the lengthy AEP presented to the Court. The AEP, therefore, provides sufficient evidence of a promise by PSD to employ Mentor for the 2001-2002 school year. Therefore, the Court finds that the Plaintiff's contract claim is not barred by the Statute of Frauds and may proceed. As such, the Court will deny the Defendants' motion for summary judgment on the contract claim. *Page 9 
 IV Civil Rights
Additionally, Mentor claims that its civil rights were violated because the Defendants "conspired to deny [Mentor its] civil right to engage in free and unfettered bargaining practice of bidding for public contracts available through" the PSD. (Compl., prayer for relief #4). It argues that the PSD designed its bid specifications for the 2001-2002 year so that Mentor would be unable to meet them and, therefore, Mentor's right to equal protection has been violated. Proof of that allegation is limited to the quoted portion of the verified complaint and to correspondence addressed to the PSD which advocates against the bid specifications. (Memo of Mossberg to PSD 15-16.)
Mentor alleges that state and federal requirements were softened or ignored in order to permit other social service agencies to compete for the contract, making Mentor less likely to obtain the contract. The RFP also required the bidder to provide three central locations, in each of three specified districts in Providence, for adult education classes. (RFP 2.) Potential vendors were required to submit addresses of these locations, as well as detail the technology resources available at such locations. See id. at 2-3 (requiring the vendor to "detail services that will be provided at central location . . . including building address(es)" and to detail "the type of technology available for use in the delivery of services" including number of workstations available to learners). Since Mentor did not own its own locations — it had previously leased its locations — it was allegedly unable to comply with this requirement. Therefore, Mentor argues that these new requirements were designed specifically to exclude it from the process.
Section 1983 states that
 "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person *Page 10 
within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983.
The first inquiry in a § 1983 claim is "whether the plaintiff has been deprived of a right `secured by the Constitution and laws' of the United States." Jolicoeur Furniture Co. v. Baldelli, 653 A.2d 740, 750 (R.I. 1995) (citations omitted).
The nature of the deprivation alleged by Mentor is unclear at this point. Mentor does allege that it had a contract right. However, a contract right is not a "public right" even if Mentor can prove it had a two-year contract. Our Supreme Court has categorized the types of rights which are generally actionable under § 1983: rights enumerated in the Bill of Rights, rights to substantive due process, and procedural due process. See L.A. Ray Realty v. Town Council, 698 A.2d 202, 210 (R.I. 1997). Examples of such rights include "voting rights, jury discrimination, school desegregations and equal protection." SeeJolicoeur Furniture Co., 653 A.2d. at 750. Mere private property rights, such as contract rights, do not fall within the ambit of § 1983; "otherwise every artful counsel could dress up his dog bite case" as within § 1983. See id. at 750.
Mentor also alleges that it has a right to "free and unfettered" bidding on public contracts and that the deprivation of that right violates the Equal Protection Clause. Indeed, requirements for bidding on public contracts are subject to the constitutional requirements embodied in the Equal Protection Clause. One can easily conceive a hypothetical requirement in a request for proposals — for example, a discriminatory racial classification — which would run afoul of the Equal Protection Clause and create liability under § 1983. However, Mentor has not shown that, for equal protection purposes, it is a member of a suspect class, or that the right to bid on public contracts is a fundamental right. Therefore, it must show that the bid specifications lacked any *Page 11 
rational basis — i.e., that they were not rationally related to some legitimate governmental purpose. See, e.g., City of Cleburne v. CleburneLiving Ctr., 473 U.S. 432, 440 (1985).
The RFP did not explicitly require Mentor to own a location — it only required that potential locations be identified and the available technology resources be described. It was reasonable for the PSD to require vendors to provide such information so that the proposals of each vendor could be evaluated. One of the explicit goals of the program was to offer "introductory technology courses resulting in entry level skills development for today's workplace. . . ." (RFP 1.) Moreover, the PSD sought to utilize locations which were on public transportation routes, presumably to increase accessibility for its targeted populations. Id. at 2. Given these goals, it was reasonable to require prospective vendors to set forth proposed locations and technology resources. Therefore, the Court cannot find that these requirements lacked a rational basis, so Mentor's equal protection claims are without merit. The Defendants' motion for summary judgment of the civil rights claim is hereby granted.
 V Defamation
Mentor finally claims that it was defamed, relying in large part upon a report submitted to the PSD by Yoel Camayd-Freixas, a "special assistant" hired by Superintendent Lam. A defamation action requires a plaintiff to prove (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) damages, unless the statement is actionable irrespective of special harm. Leddy v. Narragansett TV, L.P., 843 A.2d 481, 488 (R.I. 2004). *Page 12 
Mentor set forth the following allegations in its complaint to support its defamation claim:
 • Defendants "enacted a process to falsely assert that the Plaintiff was incompetent, purposely deceitful in its handling of finances, and its delivery of effective services." (Compl. ¶ 10.)
 • "Defendants . . . on Spanish cable television, condemned the Plaintiffs program" (Compl. ¶ 16.)
 • Defendants "engaged in a systematic process of adverse public disclosures which have substantially harmed and affected the Plaintiffs['] standing . . . resulting in a loss of income and potential grant awards." (Compl. ¶ 19.)
 • Defendants "carried out the conspiracy to defame the Plaintiffs herein by the issuing of a scathing and pejorative report . . . which was unsupported by facts, characterized by misstatements, and the intentional manipulation of data. . . ." (Compl. ¶ 27; Ex. D to Pl's Obj. to Def's Mot. Summ. J.)
While Rhode Island has adopted the liberal pleading standard as in the Federal Rules of Civil Procedure, a complaint still must "give the opposing party fair and adequate notice of the type of claim being asserted." Konar v. PFL Life Ins. Co., 840 A.2d 1115, 1118 (R.I. 2004). It was not until the third amended verified complaint was filed that the Plaintiff specified statements claimed to be defamatory. (Compl. ¶ 29). Specifically, Plaintiff points out language of the Evaluation Summary that not only implies that "Mentor has overcharged for certain employees in violation of Federal Education Mandates," but also "suggests an impropriety as to the actions of the Plaintiff, its officers and executors." Id. *Page 13 
In its objection to the Defendants' motion, Mentor has provided the Evaluation Summary which was presented by Mr. Camayd-Freixas to which Plaintiff makes specific reference to in its third amended verified complaint. (Ex. D to Pl's Obj. to Def's Mot. Summ. J.) Mentor has also provided a responsive document, originally prepared for the PSD, which spans approximately 120 pages. (Response.) In this document, Mentor objects and attempts to rebut virtually every statement made in the Evaluation Summary. Finally, Mentor has provided an addendum to the Response, along with handwritten circles and annotations, which purports to direct the reader to the pertinent allegations of defamation contained in portions of the Response. (Ex. F to Pl's Obj. to Def's Mot. Summ. J.)[5] In order to determine whether the Evaluation Summary contains any defamatory statements, Mentor urges this Court to focus on portions of the 120-page Response identified by the handwritten circles in its annotative addendum, and then compare those to the portions of the Evaluation Summary referenced therein. (Ex. E, F to Pl's Obj. to Def's Mot. Summ. J.)
The Defendants have not addressed the substance of the allegations contained in the Response. Rather, the Defendants seek summary judgment on the grounds that a specific statement, or at least a substantially similar paraphrase, must be identified. See Kenyon v. Cameron,17 R.I. 122, 124 (R.I. 1890) (finding that the trial court did not err by excluding evidence as to claims for which no specific statement was alleged, but the holding was based in part on the harmless error rule). In addition, only statements of fact may form the basis of a defamation action — statements of opinion are protected by the First Amendment.See Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1016 (1st Cir. 1988) (applying Rhode Island law). *Page 14 
Therefore, Defendants argue that the Plaintiff has failed to specifically allege any false statement of fact which could form the basis of a defamation claim.
The Court is cognizant of the Defendants' concern that they lacked adequate notice of the alleged defamation. Until Mentor filed its objection, it was impossible even to identify the allegedly defamatory statements, much less evaluate whether such statements are actually defamatory. Even with the aid of the Plaintiff's annotations, a cumbersome process is required just to identify the allegedly defamatory statements in the Evaluation Summary. Using those annotations, the Court believes that it has identified the allegedly defamatory statements contained in the Evaluation Summary and later pointed out in its most recent complaint. However, because no meaningful analysis of these statements has been undertaken by either party to this litigation, the Court will not address whether those statements may form the basis of a defamation claim. See Crellin Technologies v. Equipmentlease Corp., 18 F.3d 1, 13 n. 17 (1st Cir. 1994) (avoiding "the temptation to rummage through Rhode Island's jurisprudence" because, "[i]n our estimation, litigants have an independent responsibility to do their homework").
Mentor filed the operative complaint in March 2002. It is now five years later, and only now have the Defendants complained that they lacked notice of the Plaintiff's allegations. At any time the Defendants could have moved to dismiss the complaint, or seek a more definite statement, if they felt that the complaint was too vague. Moreover, various discovery options could have been utilized to clarify the nature of the claims asserted.
The Court finds that it would be unjust to award summary judgment in favor of the Defendants at this stage, and conclusively adjudicate Mentor's claims on the merits. See Super. R. Civ. P. Rule 1 (stating that the Rules of Civil Procedure "shall be construed and administered *Page 15 
to secure the just, speedy, and inexpensive determination of every action"). To penalize a litigant because its counsel has failed to properly articulate its claims would be inconsistent with the "notice pleading" contemplated by the Rules of Civil Procedure. The Court will, however, reserve judgment on this portion of the motion pending the submission of additional memoranda on this issue thereby allowing the parties yet another opportunity to sufficiently outline and analyze the defamation portion of the Plaintiff's claim.
 VI Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court will grant partial summary judgment in favor of the Defendants as follows:
 • with respect to the contract claims, the Defendants' motion for summary judgment is denied;
 • with respect to the civil rights claims under 42 U.S.C. § 1983, the Defendants' motion for summary judgment is granted;
 • with respect to the defamation claims, the Court reserves judgment pending the submission of additional memoranda.
Counsel for the Defendants may present an order consistent herewith which shall provide for the filing of memoranda by the Defendant within fourteen days after the filing of said order. Thereafter, counsel for the Plaintiffs may provide a response thereto within seven days.
[1] Although a party normally may not rest on the mere allegations contained it its complaint to avoid summary judgment, in this case, Mentor has submitted a verified complaint. Its principal, Arthur Mossberg, has sworn to the veracity of its allegations, so the Court will treat the complaint as his affidavit.
[2] In June 2001, Mentor prepared a detailed report responding to the evaluation by Mr. Camayd-Freixas. In that report, Mentor refers to an assignment clause in its contract: "There is no requirement for written approval of a subcontract. The contract actually states that we cannot assign the entire contract to a third party without [Providence Public School] written approval." (Response to the Evaluation Summary at v, June 13, 2001, Ex. B to Pl's Obj. to Def's Mot. Summ. J.) (Response.) This reference implies that Mentor possessed and relied upon the exact text of the written agreement transmitted to it by the PSD. However, the Court does not find this to be conclusive on whether Mentor assented to a contract limited to the 2000-2001 school year.
[3] It is not necessarily inconsistent with the written agreement, which sets forth a contract for the 2000-2001 school year, that an additional agreement also existed for the 2001-2002 school year.See Restatement (Second) of Contracts § 210, com. a (stating that "consistent additional terms not reduced to writing may be shown, unless the court finds that the writing was assented to by both parties as a complete and exclusive statement of all the terms").
[4] Neither party had provided this document to the Court at the August 20, 2007 hearing. The Court deferred its decision on the matter until the June 2000 AEP was provided.
[5] The annotation calls this Court's attention to pages 14, 15, 17, 21, 32, 35, 37, 49, 50, 51, 57, 58, 59, 60, 62, 66, 68, 74, 76, 78, 83, and 109 of the Response.