Loretta FURLAN

v.

Douglas FARRAR.

No. 2008–134–Appeal.

Supreme Court of Rhode Island.

Nov. 5, 2009.

Loretta Furlan, Plaintiff Pro Se.

Nicholas Gorham, North Scituate, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Justice ROBINSON for the Court.

This case arises from a dispute between a residential landlord and his tenant. The defendant landlord, Douglas Farrar, appeals from a judgment entered in favor of the *pro se* plaintiff, Loretta Furlan, after a bench trial in the Superior Court. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After examining the written and oral submissions of the parties, we are of the opinion that the appeal may be resolved without further briefing or argument. For the reasons hereinafter set forth, we affirm the judgment of the Superior Court.

### Facts and Travel

There is no material dispute as to the facts summarized in this paragraph. In August of 2006, Ms. Furlan called Mr. Farrar to inquire about an apartment in Smithfield that he had advertised as being for rent. Ms. Furlan had been living in Florida, and she intended to move back to Rhode Island. Shortly after placing the phone call to Mr. Farrar, Ms. Furlan asked one or two of her friends to inspect the apartment in her absence. One of those friends reported back to Ms. Furlan that the apartment was "nice and clean." Thereafter, Ms. Furlan and defendant orally agreed that Ms. Furlan would pay $800 as a security deposit and $800 for the first month's rent. On August 25, 2006, Ms. Furlan then sent defendant a cashier's check in the amount of $1600.

The starting date of the rental period was in dispute at trial. Ms. Furlan contended that the rental period was to begin on October 1, 2006. The defendant disagreed and asserted that he and Ms. Furlan had agreed that the rental period would begin on September 1.

At some point in time after having sent the $1600 check to Mr. Farrar, Ms. Furlan called him to inform him that she would be delayed in taking possession of the apartment. The date on which this call was made was also in dispute. According to plaintiff, she placed this call on October 1. The defendant asserts, however, that it was on September 10 and then again in the third week of September that plaintiff called him to inform him of the delay.

On October 6, Ms. Furlan called defendant to tell him that she would not be taking the apartment after all, and she asked that defendant return $800 to her. The defendant told her that he was unwilling to return any money to her. The plaintiff testified that, later on October 6, approximately one half-hour after her initial phone call to Mr. Farrar, she called him again to tell him that, since defendant had refused to return the requested amount to her, plaintiff would in fact use the apartment; she further testified that she told defendant that her brother would be bringing furniture to the apartment. However, defendant refused to allow Ms. Furlan to take possession of the apartment or allow her brother to bring furniture to the apartment.

Consequently, on December 22, 2006, plaintiff filed the instant action in the District Court's Small Claims Court. In her complaint, Ms. Furlan sought damages in the amount of $800 plus costs. On September 6, 2007, after a bench trial in the Small Claims Court, the trial justice found

in favor of plaintiff[1] The defendant then proceeded to file a timely appeal and sought a *de novo* trial in the Superior Court.

In due course, a bench trial was held in the Superior Court on November 9, 2007. At that trial, plaintiff testified that, on October 6, 2006,[2] she had been driving to Rhode Island when she learned that her husband had been injured at work in Florida. The plaintiff further testified that she then drove back to Florida and called defendant to advise him that she would not be taking the apartment. The plaintiff further testified that defendant refused her request to refund her money and subsequently refused to allow her to occupy the apartment in October. The plaintiff testified that her brother had arrived at the apartment in order to move furniture into it, but (in her words) "the men that were working at the house wouldn't let him in."

The defendant admitted that, after plaintiff called him on October 6, 2006 to notify him that she would not be taking the apartment, plaintiff called him back and requested that her brother be given access to the apartment to move furniture into it. The defendant further testified that, before plaintiff called him back, he had instructed his staff to "remove the key" because he "didn't want anybody moving in." The defendant also testified that no written agreement with plaintiff existed, and he added that he had intended to provide a lease once plaintiff took possession of the apartment. According to

defendant, his general course of conduct was to enter into lease agreements with all his tenants. The defendant also testified that, on October 16 and October 30, 2006, he had placed advertisements in a newspaper indicating that the apartment at issue was available for rent; he testified that said advertising cost $169.84 per advertisement—for a total amount of $339.68. It was further his testimony that a few people expressed interest in renting the apartment, but that he decided not to rent to them.

The trial justice in the Superior Court found that the starting date of the rental period was "the beginning of September as advocated by the defendant," and he also found that the landlord-tenant relationship began when defendant received plaintiff's check for $1600. The trial justice further stated:

"Mr. Farrar had $800 for the month of September rent, and that certainly was used up even though the plaintiff, Miss Furlan, you didn't arrive at the apartment, there was another $800 in security deposit that began to spill over into the month of October, and at some point, specifically October 6th, Miss Furlan, you made a telephone call and you advised Mr. Farrar that you wouldn't be taking the apartment. Sometime thereafter on the same day, by both [parties'] testimony, you decided to at least try and take the benefit of your bargain and take the remaining weeks and whatever money that you had left on this particular transaction, and by Mr. Farrar's tes-

---

1. The plaintiff was initially defaulted for her failure to appear for trial in the Small Claims Court on February 13, 2007. In defaulting plaintiff, the trial justice dismissed plaintiff's complaint and awarded defendant damages on his counterclaim. The plaintiff subsequently filed a motion to vacate the default judgment on the grounds that she had not been notified of the February 13 trial date.

The District Court vacated the default judgment on August 30, 2007.

2. Ms. Furlan initially testified that she had called Mr. Farrar on October 5, but she later testified that she had placed the phone call on October 6. We shall rely on the latter date in applying the law to the facts of this case.

timony as well as yours, both sides agree that Mr. Farrar decided not to allow that."

The trial justice further found that defendant did not send a termination letter to plaintiff and that plaintiff had not abandoned the premises as of the second phone call on October 6, 2006. The trial justice then determined that plaintiff was entitled to be awarded the sum of $625—such sum being reflective of the rental value of the apartment from the period from October 6 through October 31, during which period the defendant landlord would not permit the plaintiff tenant to have access to the apartment. However, the trial justice then proceeded to offset that $625 amount by defendant's advertising costs (*viz.*, $339.68), and he accordingly awarded plaintiff the sum of $285.32 in net damages, plus costs.

Final judgment was entered on November 9, 2007 in favor of plaintiff in the amount of $320.35, including $35.03 in costs. The defendant filed a notice of appeal on November 27, 2007.

### Standard of Review

■ This Court has stated that "[i]t is well settled that the findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Greensleeves, Inc. v. Smiley*, 942 A.2d 284, 289 (R.I.2007) (internal quotation marks omitted); *see also Riley v. Stafford*, 896 A.2d 701, 703 (R.I.2006); *Technology Investors v. Town of Westerly*, 689 A.2d 1060, 1062 (R.I.1997). In reviewing a trial justice's findings, we will not disturb them "unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice be-tween the parties." *Vigneaux v. Carriere*, 845 A.2d 304, 306 (R.I.2004). We have carefully reviewed each of the trial justice's factual findings as they relate to the issues properly before us on appeal, and we can perceive no clear error with respect to any material fact.

■ The standard of review is different with respect to questions of law: "In contrast to our deferential stance vis-a-vis factual findings made by a trial justice, we review in a *de novo* manner a trial justice's rulings concerning questions of law." *Grady v. Narragansett Electric Co.*, 962 A.2d 34, 41 (R.I.2009); *see also Manchester v. Pereira*, 926 A.2d 1005, 1011 (R.I. 2007); *Dellagrotta v. Dellagrotta*, 873 A.2d 101, 109 (R.I.2005).

### Analysis

The defendant contends that plaintiff had a month-to-month tenancy and that, accordingly, plaintiff is not entitled to damages because she did not provide the requisite thirty days notice to terminate her tenancy as he contends is required under G.L.1956 § 34–18–37(b). The defendant asserts that plaintiff was not entitled to the return of her security deposit—because, in his view, plaintiff owed rent for an additional thirty days after she called defendant on October 6, 2006 to notify him that she would not be able to take the apartment.

■ The defendant is correct in asserting that, with respect to the case at bar, a month-to-month tenancy was created because the oral rental agreement between the parties did not fix a specific term. The language of § 34–18–15(d) is completely clear: "Unless the rental agreement fixes a definite term, the tenancy is week-to-week in case of a roomer who pays weekly rent, and in all other cases month to month." Moreover, when there is a month-to-month tenancy, rent is payable in

equal monthly installments at the beginning of each month. Section 34–18–15(c).

 The trial justice supportably found that the lease term began on September 1, 2006. Thus, $800 of the sum of $1600 that was sent by plaintiff to defendant on August 25 was properly used as September's rent. Moreover, in view of the provisions of the statutes cited in the preceding paragraph, defendant correctly maintains that plaintiff owed him an additional $800 on October 1, 2006 for October's rent. In view of the fact that plaintiff failed to send him an additional check, defendant was entitled to deduct an appropriate amount from plaintiff's security deposit for unpaid, accrued rent. Section 34–18–19(b).

What distinguishes this case from so many others, however, is the fact that in the instant case rent only accrued until October 6, 2006—on which date the defendant landlord prevented his tenant from having access to the apartment, in violation of § 34–18–21 and § 34–18–44. The trial justice correctly ruled that, because defendant prevented plaintiff and her brother from accessing the apartment after October 6, plaintiff was entitled to the return of her security deposit minus the unpaid, accrued rent for the period from October 1 through October 6.

As for the trial justice's decision to offset plaintiff's damages by the amount that defendant spent on advertising (*viz.,* $339.68), we note that defendant would have had to incur such an expense in any event after the termination of the tenancy. However, there being no cross-appeal as to this issue, we decline to make any definitive ruling about same.

In view of the fact that the plaintiff was under no obligation to pay rent after the defendant denied her access to the apartment on October 6, 2006, we have no occasion to decide whether the plaintiff was required to provide thirty days advance notice in order to terminate the tenancy pursuant to § 34–18–37(b). *See Grady,* 962 A.2d at 42 n. 4 (referring to "our usual policy of not opining with respect to issues about which we need not opine"); *Calise v. Curtin,* 900 A.2d 1164, 1169 (R.I.2006) ("[W]e leave this issue for another day in another case."); *see generally PDK Laboratories Inc. v. United States Drug Enforcement Administration,* 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part) (stating that "the cardinal principle of judicial restraint" is that "if it is not necessary to decide more, it is necessary not to decide more").

### Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court. The record may be remanded to that tribunal.