QUALITY CONCRETE CORP.

v.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA.

No. 2010–263–Appeal.

Supreme Court of Rhode Island.

April 16, 2012.

---

Brian E. Mereness, Esq., for Plaintiff.

Daniel E. Burgoyne, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice ROBINSON, for the Court.

The plaintiff, Quality Concrete Corp. (Quality Concrete), appeals from the Superior Court's grant of summary judgment in favor of the defendant, Travelers Property Casualty Company of America (Travelers).

We understand the essence of Quality Concrete's contentions on appeal to be the following: (1) that, upon the issuance by a potential plaintiff of an "adversarial communication," Travelers was required to provide independent counsel to represent the insured's interests because that adversarial communication presaged a potential conflict of interest between the insurer and the insured; (2) that summary judgment

in this case was inappropriate because the determination as to whether or not there was a conflict of interest between the insurer and the insured constitutes a material issue of fact; and (3) that Travelers ratified Quality Concrete's decision to engage independent counsel by not objecting to Quality Concrete's engagement of an independent attorney to represent it with respect to the fatal accident that is described in the "Facts and Travel" section of this opinion. On the basis of those contentions, Quality Concrete urges this Court to reverse the Superior Court's grant of summary judgment.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After reviewing the record and considering the written and oral submissions of the parties, we are satisfied that cause has not been shown and that this appeal may be resolved without further briefing or argument.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

On June 30, 2007, Quality Concrete purchased from Travelers a commercial general liability policy and a commercial umbrella policy. Those policies provided coverage to Quality Concrete from June 30, 2007 to June 30, 2008.

On August 17, 2007, a young boy died after he and several others trespassed onto Quality Concrete's property and began playing on industrial equipment. Quality Concrete gave timely notice to Travelers about the tragic incident that resulted in the death of the young boy.

Subsequently, in a letter to Quality Concrete dated January 21, 2008, a representative of Travelers advised Quality Concrete of the receipt of a letter from a lawyer representing the estate of the young boy. In its letter to its insured, Quality Concrete, Travelers informed its insured that it had hired a law firm to represent Quality Concrete in connection with the matter, and it confirmed the fact that an attorney from that law firm had been in touch with Quality Concrete with respect to same.[1]

In addition, the letter from Travelers to Quality Concrete noted that a lawsuit had yet to be filed, but it also indicated that Travelers' defense of Quality Concrete was being "provided under a strict Reservation of Rights * * *." Travelers explained as follows its rationale for the "strict Reservation of Rights:"

> "[I]f punitive damages are sought due to any allegations of gross negligence, recklessness, and/or willful and wanton conduct (based upon prior incidents on the property)[,][p]unitive damages, if pled and awarded, would not be covered under the insurance contract." [2]

---

1. In its statement submitted to this Court pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure, Quality Concrete reported that, at some point in time after the young boy's death in August of 2007, it received a letter from his estate which stated, according to Quality Concrete, that "Quality [Concrete] should notify its attorney and insurance company of the negligence claim, and that 'legal action will be filed' if no re-

sponsive action is taken within 14 days." That letter is not part of the record before this Court. We assume, however, that that letter is what Quality Concrete is referencing when it employs the term "adversarial communication."

2. In its Rule 12A statement to this Court, Quality Concrete indicates that, almost ten years prior to the incident that resulted in the

The letter from Travelers went on to state that the insurer "reserve[d] the right to deny coverage to [Quality Concrete] or anyone claiming coverage under [the] policy for punitive damages."

The January 21, 2008 letter further stated that Travelers did not waive its right to deny coverage "for any other valid reason which may arise," and it added that Quality Concrete might "wish to consult with personal counsel (at your own expense) to discuss a possible future claim for punitive damages."

Thereafter, Quality Concrete did in fact hire independent legal counsel; Quality Concrete has consistently contended that the hiring of independent counsel was necessary in light of Travelers' reservation of rights with respect to "allegations of gross negligence, recklessness, and/or willful and wanton conduct" and with respect to "a possible future claim for punitive damages."

In due course, a settlement was reached with the decedent's estate, with no civil action against Quality Concrete ever having been commenced. (Quality Concrete's independent counsel attended the settlement negotiations.)

Quality Concrete asserts that, until that settlement with the estate was reached, it had incurred over $74,000 in what it characterizes as "documented defense expenses" resulting from the representation provided by Quality Concrete's independent legal counsel. Quality Concrete sought reimbursement from Travelers for those legal expenses, but the insurer has at all times denied any obligation to reimburse Quality Concrete for same. As a result, on October 28, 2009, Quality Concrete filed a complaint in the Superior Court for Providence County. In that

complaint, Quality Concrete alleged (1) that Travelers had breached its contract with Quality Concrete; (2) that Travelers had breached its fiduciary obligations to Quality Concrete; (3) that Travelers, in issuing a reservation of rights, had acted in bad faith; and (4) that Travelers, pursuant to G.L.1956 § 9-1-33, was liable for the attorneys' fees incurred by Quality Concrete in prosecuting the instant case.

Thereafter, invoking Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, Travelers moved to dismiss Quality Concrete's complaint for failure to state a claim upon which relief could be granted. A hearing on the motion was held on May 6, 2010; during that hearing, the hearing justice converted the motion to dismiss to a motion for summary judgment due to the fact that matters outside the pleadings were referenced in the motion to dismiss.

After the attorneys for the respective parties had concluded their arguments concerning the dispositive motion, the hearing justice stated that, in Rhode Island, an insurer's duty to defend a suit brought against one of its insureds is determined by the allegations contained within the complaint. The hearing justice then observed that no suit had ever been filed with respect to the death of the young boy. (The hearing justice further noted that it was undisputed that Quality Concrete had not sought its insurer's approval relative to the engagement of independent counsel; instead, the hearing justice noted, Quality Concrete "merely alleged a conflict of interest under the policy and engaged counsel without approval.") The hearing justice stated that, although Travelers had reserved its rights with respect to punitive damages, "such damages only would come into play after the filing of a complaint * * *." The hearing justice continued by

death of the young boy, another child had died while on the company's property under

circumstances similar to those surrounding the death of the young boy in 2007.

stating that, in view of the fact that no complaint had ever been filed, it was speculative to conclude that the decedent's estate would have sought punitive damages such that a conflict would have arisen as a result of Travelers' issuance of the reservation of rights letter.

The hearing justice accordingly concluded that, due to the fact that no complaint had been filed, any potential conflict of interest between insurer and insured "had yet to ripen." After explaining his reasoning, the hearing justice granted Travelers' motion for summary judgment. Quality Concrete then timely appealed to this Court.

## II

### Standard of Review

We review a grant of a motion for summary judgment in a *de novo* manner. *Empire Acquisition Group, LLC v. Atlantic Mortgage Co.*, 35 A.3d 878, 882 (R.I.2012); *see also Generation Realty, LLC v. Catanzaro*, 21 A.3d 253, 258 (R.I. 2011); *Cullen v. Lincoln Town Council*, 960 A.2d 246, 248 (R.I.2008). In such a review, we apply the same standards and rules as did the hearing justice, *Catanzaro*, 21 A.3d at 258, and we will affirm summary judgment "if, when viewing the evidence in the light most favorable to the nonmoving party, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Trust of McManus v. McManus*, 18 A.3d 550, 552 (R.I.2011) (internal quotation marks omitted); *see also Henderson v. Nationwide Insurance Co.*, 35 A.3d 902, 905 (R.I.2012); *Nunes v. Meadowbrook Development Co.*, 24 A.3d 539, 542 (R.I. 2011); *Lynch v. Spirit Rent–A–Car, Inc.*, 965 A.2d 417, 424 (R.I.2009).

Nevertheless, "[w]hen a genuine issue of fact exists * * * the trial justice must not decide the issue, and in such an instance summary judgment is not an appropriate remedy." *DeMarco v. Travelers Insurance Co.*, 26 A.3d 585, 605 (R.I.2011) (alteration and omission in original) (internal quotation marks omitted); *see also Estate of Giuliano v. Giuliano*, 949 A.2d 386, 394 (R.I.2008) (holding summary judgment was not warranted in a case in which there was a "genuine issue of material fact"); *Gliottone v. Ethier*, 870 A.2d 1022, 1029 (R.I.2005) (stating that, when a party "presents evidence sufficient to create a genuine issue of material fact * * *, summary disposition of his cause of action is improper").

## III

### Analysis

#### A

#### Travelers' Duty to Defend

We have frequently articulated the principle that, in Rhode Island, whether an insurer is required to defend its insured is "determined by applying the pleadings test." *See Peerless Insurance Co. v. Viegas*, 667 A.2d 785, 787 (R.I.1995) (internal quotation marks omitted); *see also American Commerce Insurance Co. v. Porto*, 811 A.2d 1185, 1191 (R.I.2002); *Progressive Casualty Insurance Co. v. Narragansett Auto Sales*, 764 A.2d 722, 724 (R.I.2001). Under the pleadings test, the trial court must review "*the allegations contained in the complaint,* and if *the pleadings* recite facts bringing the injury complained of within the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff." *Peerless Insurance Co.*, 667 A.2d at 787 (emphasis added) (internal quotation marks omitted); *see also Howard v. Guidant Mutual Insurance Group*, 785 A.2d 561, 562 (R.I.2001) (mem.); *Shelby Insurance Co. v. North-*

*east Structures, Inc.,* 767 A.2d 75, 76 (R.I. 2001); *Progressive Casualty Insurance Co.,* 764 A.2d at 724; *Hingham Mutual Fire Insurance Co. v. Heroux,* 549 A.2d 265, 266 (R.I.1988). *See generally* Douglas R. Richmond, *Reimbursing Insurers' Defense Costs: Restitution and Mixed Actions,* 35 San Diego L.Rev. 457, 460–61 (1998) ("Under [the majority] approach, an insurer's duty to defend is determined by comparing the complaint or petition with the policy. If the facts alleged in the complaint or petition would give rise to liability under the policy if proven, the insurer must defend the insured.").

On appeal, Quality Concrete contends that, pursuant to this Court's holding in *Employers' Fire Insurance Co. v. Beals,* 103 R.I. 623, 240 A.2d 397 (1968), an insurer has a duty to provide independent counsel to its insured upon the issuance of what Quality Concrete calls an "adversarial communication" regarding a covered incident. Quality Concrete contends that the letter to Quality Concrete from an attorney for the decedent's estate (*see* footnote 1, *supra*) constituted just such an "adversarial communication."

In *Beals,* the insurer was simultaneously (1) engaged in a lawsuit against the insured in which the insurer averred that it need not indemnify or defend the insured for the incident at issue, which the insurer alleged involved intentional conduct; and (2) engaged in the defense of the insured in a suit sounding in tort that was a direct result of the alleged intentional conduct. *Beals,* 103 R.I. at 625–26, 240 A.2d at 399–400. We characterized such circumstances as constituting a "sharp conflict of interest." *Id.* at 627, 240 A.2d at 400. We elaborated on that conflict of interest as follows:

> "[T]he prime interests of the insurer would best be served by an adjudication that the injury * * * was caused inten-

tionally, for in such an event [the] insurer owes no duty to defend or indemnify insureds; contrariwise, the prime interests of the insured would best be served by * * * an adjudication that the injury to [the injured person] was the result of a pure accident—for in such an event the insurer clearly owes a duty to defend * * *." *Id.*

After concluding that the insurer "ha[d] a duty to defend its insured," we reasoned that an avenue by which the insurer could avoid the above-described conflict was to provide the insured with "independent counsel" with respect to the tort action. *Id.* at 632, 635, 240 A.2d at 403, 404. Through its written submissions and at oral argument, Quality Concrete has in essence urged this Court to extend the principle articulated in *Beals* so that an insured would be entitled to independent counsel whenever there is an "adversarial communication" from a potential plaintiff with respect to an incident involving potential liability on the part of the insured. And, as previously noted, Quality Concrete viewed the letter from the attorney for the decedent's estate to be of such a nature as to raise the possibility of Travelers and its insured having conflicting interests.

Some ten years ago, this Court addressed a similar argument in favor of expanding the independent-counsel rights of an insured that were first recognized in the *Beals* case. *See Labonte v. National Grange Mutual Insurance Co.,* 810 A.2d 250 (R.I.2002). In that case, we noted that, in contrast to the situation in *Beals,* the "plaintiff had not yet been sued when he requested independent counsel." *Id.* at 254–55. We proceeded to decline to extend *Beals,* despite "[t]he mere fact that a conflict *might* arise at some later point * * *." *Id.* at 255 (emphasis added).

Similarly, in the instant case no civil action had yet been commenced when

Quality Concrete engaged independent counsel—indeed, it is undisputed that no complaint was *ever* filed by the decedent's estate. Accordingly, there was no actual conflict between the prime interests of the insurer and those of the insured such as were present in *Beals*.[3] *See Labonte,* 810 A.2d at 254–55 (distinguishing the facts of that case from those in the *Beals* case); *see also Beals,* 103 R.I. at 633, 240 A.2d at 403. We reiterate what we said in *Labonte* to the effect that "[t]he mere fact that a conflict *might* arise at some later point" does not call for the immediate engagement of independent counsel prior to the filing of an actual complaint which would indicate whether or not punitive damages were being sought. *See Labonte,* 810 A.2d at 255 (emphasis added). On the basis of this jurisdiction's well-settled law and in view of the facts of this case, we hold that Quality Concrete was not entitled to have Travelers subsidize the engagement of independent counsel to represent Quality Concrete in addition to the law firm that Travelers had hired to represent Quality Concrete in connection with the death of the young boy.

## B

### Travelers' Alleged Ratification of the Independent Counsel

■ Quality Concrete additionally contends that Travelers ratified its engagement of independent counsel by not objecting to the fact that the insured had engaged independent counsel.[4] Specifically, Quality Concrete states that it notified Travelers on several occasions (1) that Quality Concrete believed that a conflict of interest existed and (2) that it had hired independent counsel to represent it; additionally, Quality Concrete notes that it submitted legal bills to Travelers with respect to that representation and that Quality Concrete's independent counsel referred to himself as *"Beals* Counsel" in communications with Travelers. According to Quality Concrete, Travelers responded by denying the existence of a conflict of interest, but without ever explicitly accepting or rejecting Quality Concrete's position. As a result, Quality Concrete contends that Travelers unreasonably withheld approving Quality Concrete's hiring of independent counsel and that its subsequent conduct and inclusion of the insured's independent counsel in the settlement process constitutes approval by ratification.

■ As a general rule, "the engagement of an independent counsel to represent the insured *should be approved by the insurer.*" *Beals,* 103 R.I. at 635, 240 A.2d at 404 (emphasis added). At no time did any such approval emanate from Travelers with respect to the matter involving the decedent's estate. And, as we have held in Section III A, *supra,* Travelers was not legally obliged to pay for the representation of Quality Concrete by independent counsel. Moreover, Travelers had specifically advised Quality Concrete that it might "wish to consult with personal counsel (at your own expense) to discuss a possible future claim for punitive damages." Also, we fail to see how the fact that Travelers did not object when Quality Concrete's independent counsel attended the settlement negotiations somehow rati-

---

3. By the holding in this case, we do not mean to exclude those rare circumstances in which a conflict of such an extent exists prior to the filing of a lawsuit that the engagement of independent counsel might become necessary.

4. In light of our holding in Section III A of this opinion, *supra,* we need not reach Quality Concrete's other appellate contentions except for its argument concerning ratification. *See Furlan v. Farrar,* 982 A.2d 581, 585 (R.I. 2009).

fied Quality Concrete's position that it was entitled to have its independent counsel paid for by Travelers.

In our judgment, Quality Concrete's argument regarding ratification is without merit.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record in this case may be returned to that tribunal.