**Galina LICHMAN and Walter Mirzoyan, Plaintiffs,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a Amtrak, Defendant, Third–Party Plaintiff,**

v.

**Oakwells, LLC, and Oakwells Commuter Rail LLC, Third–Party Defendants.**

**CA No: 15–456–M–PAS**

United States District Court, D. Rhode Island.

Signed August 7, 2017

Ronald J. Resmini, Andrew O. Resmini, Law Offices of Ronald J. Resmini, Ltd., Providence, RI, for Plaintiffs.

Benjamin R. Davis, Paul E. Dwyer, Jr., Locke Lord, LLP, Providence, RI, for Defendant, Third–Party Plaintiff.

Mark W. Shaughnessy, Boyle, Morrissey & Campo, PC, Boston, MA, Clint D. Watts, Boyle, Shaughnessy and Campo, P.C., Providence, RI, for Third–Party Defendants.

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

This case can best be summed up as a slip-and-fall accident of a garden variety. As told by Plaintiff Galina Lichman, she sustained injuries after falling on a wet floor in the Providence train station ("Station"), which is owned and maintained by Defendant National Railroad Passenger Corporation, d/b/a Amtrak ("Amtrak"). Ms. Lichman filed suit against Amtrak for her injuries, and Amtrak, in turn, brought a Third–Party Complaint against Ms. Lichman's employer, Oakwells, LLC, and Oakwells Commuter Rail, LLC (collectively "Oakwells"), who agreed to indemnify and defend Amtrak under certain circumstances pursuant to their lease agreement ("Lease").

Amtrak has moved for summary judgement on Ms. Lichman's claims (ECF No. 22), arguing that Amtrak had no notice of the floor's condition and that any danger that might have been present was open and obvious to Ms. Lichman. Like Amtrak, Oakwells has moved for summary judgment (ECF No. 26). In support of Oakwells' Motion, it claims: (1) the Lease does not require indemnification and defense of negligence actions, and (2) Oakwells has no duty to maintain the common area where Ms. Lichman fell.

## BACKGROUND

Oakwells is a commercial tenant leasing a newsstand/retail store in the Station. The

store is situated such that Oakwells patrons and employees must travel through the common areas of the Station to access the store.

Under the Lease, Amtrak and Oakwells maintain a landlord-tenant relationship. Paragraph 12 of the Lease creates a duty for Oakwells to defend and indemnify Amtrak from Oakwells employees' claims, but this duty does not apply to the negligence or willful misconduct of Amtrak. Specifically, the indemnity provision [1] states:

> Tenant shall indemnify and hold harmless the Indemnified Parties, as defined below, and defend the Indemnified Parties if requested of Tenant, from and against any and all losses, damage, claims, demands, actions or causes of action, suits at law or in equity, judgments, liability or expenses, including death, to any person whatsoever, including loss or destruction or loss of use thereof, arising out of, directly or indirectly, any accident or occurrence, however caused, in or as a result of the exercise of the Lease granted herein or the use of Providence Station or any part thereof by Tenant, its officers, employees, agents, servants and invitees, provided that the foregoing release shall not apply to the negligence or willful misconduct of the Indemnified Parties.

Ms. Lichman worked as a clerk at Oakwells' news shop. She was responsible for opening the shop and bringing newspapers inside from a bin outside the Station. On January 11, 2014, in performing her job duties, she arrived at the Station at about 6:15 a.m. and opened the shop. After opening up, she entered the store for a few minutes to prepare for business. Due to the icy and wet conditions outside the Station, Ms. Lichman wiped her feet on the shop's carpeted floor. At approximately

6:28 a.m., she walked through the common area of the Station, passed two sets of doors, and exited the Station to get the day's newspapers from a bin. Once outside, she retrieved a single bundle of newspaper, weighing roughly eight to ten pounds. Now, with the newspapers in hand, she reversed direction and trudged back through the sliding doors. On her way back to the news shop, she crossed the same common area, but this time, she slipped, lost her balance, and fell on the floor near a trash can located on the side of the Oakwells store. As she painfully sat on the ground waiting for help, she realized that her clothes were soaked in water.

Ms. Lichman brought the instant action against Amtrak for its failure to keep the premises safe on the day of the incident. As a result of Ms. Lichman's suit, Amtrak brought third-party claims against Oakwells, asserting that Oakwells breached its contractual duty to defend and indemnify Amtrak and that Oakwells owed a duty to maintain the premises upon which Ms. Lichman fell.

## STANDARD OF REVIEW

A motion for summary judgment should be granted if the pleadings, discovery, disclosure materials on file, and any affidavits "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). A " 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

---

1. The Lease defines Amtrak as the "Indemnified Parties" and Oakwells as the "Tenant."

The moving party bears the burden of establishing that no genuine issues of material fact exist, *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 853 (1st Cir. 2016). Once the moving party has made the requisite showing, the non-moving party may not merely rely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in the rule—set out specific facts showing a genuine issue for trial. *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016). In applying this standard, the Court views the record in the light most favorable to the non-moving party, accepting all reasonable inferences favoring that party. *Audette v. Town of Plymouth*, 858 F.3d 13, 20 (1st Cir. 2017).

## DISCUSSION

The present motions for summary judgment implicate the rule of two, unfortunately missing the rule of three. The parties have introduced two motions for summary judgment, each on two bases. For its part, Amtrak moves for summary judgment on Ms. Lichman's claims because: (1) Amtrak had neither actual nor constructive notice of the floor's condition, and (2) the condition was open and obvious to Ms. Lichman. Oakwells, in its Motion, seeks to extricate itself from the suit because: (1) the Lease's indemnity and defense provision does not encompass negligence actions against Amtrak, and (2) Oakwells had no duty of care over common areas under Amtrak's control. The Court begins with Amtrak's Motion.

### I. Amtrak's Motion for Summary Judgement

#### A. Notice

■ Amtrak starts by casting doubt on Ms. Lichman's ability to generate a triable issue as to Amtrak's notice of the wet floor. Under Rhode Island law, landowners have a duty to "protect against the risks of a dangerous condition existing on the premises." *Konar v. PFL Life Ins. Co.*, 840 A.2d 1115, 1118 (R.I. 2004). But to be held liable, the landowner must "know[ ] of, or by exercise of reasonable care would have discovered, the dangerous condition." *Id.* (quoting *Kurczy v. St. Joseph Veterans Ass'n, Inc.*, 820 A.2d 929, 935 (R.I. 2003)).

As correctly pointed out by Amtrak, Ms. Lichman has not pointed to any direct evidence that Amtrak had actual knowledge of the water accumulation on the floor. Ms. Lichman, prior to her fall, did not inform an Amtrak employee of the water accumulation, nor is there any other evidence that Amtrak actually knew of the flooring condition. As for constructive notice, Amtrak asserts that Ms. Lichman has failed to present evidence of the length of time the water was present. Indeed, Ms. Lichman herself did not even know of the condition prior to her fall, as limned below in the Open & Obvious sub-section.

■ Ms. Lichman counters by directing the Court's attention to a number of pieces of circumstantial evidence, which she contends generates a genuine issue as to notice. This circumstantial evidence includes: (1) video evidence of a wet mat leading into the Station, (2) records of at least two similar injuries that occurred due to wet flooring, (3) Ms. Lichman's testimony of prior falls at the Station, (4) Ms. Lichman's testimony that "every morning the janitor" mops "the floor" but on the day of her fall she did not see him mopping the floor, and (5) Ms. Lichman's testimony that she saw the janitor near the luggage room when she fell.

■ "Slip and fall cases are difficult to prove," and "these cases are [often] established through circumstantial evidence from which a jury can infer the existence or nonexistence of negligence on the part

of a defendant." *Mead v. Papa Razzi Rest.*, 840 A.2d 1103, 1108 (R.I. 2004) (quoting *Barone v. Christmas Tree Shop*, 767 A.2d 66, 71 (R.I. 2001) (Goldberg, J., dissenting)). Though in resolving this dispute, the Court does not need to pull out its tape measure and calculator, measure each piece of circumstantial evidence, and determine if the sum of their parts arguably equates to constructive notice. In fact, venturing beyond Ms. Lichman's fifth point would be pointless. Because when an employee is in close proximity to the accident, this fact alone suffices to create a genuine issue of material fact regarding notice. *DeRobbio v. Stop & Shop Supermarket*, 756 A.2d 209, 212 (R.I. 2000) ("[H]ere an employee of Stop & Shop was working in close proximity to the area of plaintiff's fall and was actually present when she fell. Therefore, reasonable minds could disagree on the question of whether defendant was on notice of the dangerous condition.").

In short, a genuine issue of material fact exists as to notice, so we need go no further on this issue.

### B. Open & Obvious

■ Turning away from Amtrak's knowledge, the Court switches gears and considers Ms. Lichman's knowledge of the floor condition. On this front, Amtrak asserts that Ms. Lichman knew the floor was wet, and therefore Amtrak owed no duty of care to her.

■ People are expected to have knowledge and an appreciation of obvious risks. *See Bucki v. Hawkins*, 914 A.2d 491, 496 (R.I. 2007). As such, a landowner does not owe a duty of care when an individual is aware of the danger or when the danger is open and obvious to a reasonable person. *See Roy v. State*, 139 A.3d 480, 490 (R.I. 2016). So if Ms. Lichman knew of the wet

spot prior to her fall, Amtrak would have a viable argument.

Amtrak's line of reasoning does not, however, get it very far at this stage because its premise—that Ms. Lichman knew the floor was wet—mischaracterizes Ms. Lichman's deposition. Ms. Lichman testified as follows:

Q. When you were going into the store that morning—

A. Yeah.

Q. —did you see any wet spot or defect on the floor where you would later fall when you went into the store?

A. I just notice it was wet floor, that's all.

Q. Okay.

A. And not exactly. Usually every morning janitor mopping floor. I didn't pay attention, frankly speaking.

\* \* \* \*

Q. Okay. Heading out to get the newspapers, you did not see any liquid on the floor in the area where you fell?

A. You know, outside train station it was very wet out front.

[MR. RESMINI: He's just asking you when you were leaving your store if you saw any liquid.]

A. Oh, no, I didn't.

As the deposition excerpts demonstrate, Ms. Lichman claims to have not seen the wet spot prior to her fall. She only acknowledges that the outside was wet, and she denied seeing liquid on the floor when she got the newspapers. For this reason, a factual dispute remains as to whether Ms. Lichman was aware of the wet condition prior to her fall, so Amtrak's open and obvious defense is not primed for summary disposition.

Amtrak's arguments in support of its defense of Ms. Lichman's claims are more appropriately made in closing argument to a jury who should decide the disputed facts after a full airing at trial. Accordingly, Amtrak's Motion for Summary Judgment (ECF No. 22) is DENIED.

## II. Oakwells Motion for Summary Judgement

### A. Duty to Indemnify & Defend

The Lease between Oakwells and Amtrak provides that Oakwells must indemnify and defend[2] Amtrak for all claims brought by an Oakwells employee when the claims result from an exercise of the Lease.[3] This baseline rule of indemnification and defense is succeeded by an exception: "the foregoing release shall not apply to the negligence or willful misconduct of the Indemnified Parties."[4] Oakwells posits that this exception bars defense and indemnification of any negligence claim brought against Amtrak, while Amtrak maintains a much narrower reading—that the clause only applies to claims in which Amtrak has been negligent.

It is first-year tort law that there are two types of negligence: (1) failure to exercise a standard of care that a reasonable and prudent person would exercise and (2) a tort claim for this failure. *Negligence*, Black's Law Dictionary (10th ed. 2014). To decide Oakwells' Summary Judgement Motion for this Count, the Court need only decide which definition applies to the Lease.

In umpiring this dispute, the Court can safely say that this is not one on the periphery of the strike zone, such that the Lease must be construed against the indemnified party, *see Sansone v. Morton Mach. Works, Inc.*, 957 A.2d 386, 393 (R.I. 2008), but it is instead straight down the middle. Most salient, negligence is succeeded by the preposition "of," which is modified by "Indemnified Parties." Of is a preposition with a multitude of uses. One of those uses—and the one that applies here—is to express a relationship where one entity belongs to another. So it follows, Oakwells does not have to defend the negligence belonging to Amtrak.

Now, Oakwells implores the Court to read the word "claim" into the exception. The Court declines to superimpose words and then give effect to the Lease. Oakwells and Amtrak bargained for the words before the Court, after all, so justice will not be served by altering those words. Furthermore, where, as here, the terms of the provision are clear and unambiguous, the Court looks no further than those words. *Inland Am. Retail Mgmt. LLC v. Cinemaworld of Fla., Inc.*, 68 A.3d 457, 462 (R.I. 2013).

2. Under Rhode Island law, a duty to defend and a duty to indemnify are distinct. *Travelers Cas. & Sur. Co. v. Providence Wash. Ins. Co.*, 685 F.3d 22, 25 (1st Cir. 2012). The duty to defend is broader in its scope than the duty to indemnify, and the duty to defend "does not depend on whether the injured party will ultimately prevail against the insured." *Id.* (quoting *Employers' Fire Ins. Co. v. Beals*, 103 R.I. 623, 240 A.2d 397, 403 (R.I. 1968)).

3. Amtrak and Oakwells agree that Rhode Island law governs the Lease.

4. In relevant part, the provision provides:

Tenant, from and against any and all losses, damage, claims, demands, actions or causes of action, suits at law or in equity, judgments, liability or expenses, including death, to any person whatsoever, including loss or destruction or loss of use thereof, arising out of, directly or indirectly, any accident or occurrence, however caused, in or as a result of the exercise of the Lease granted herein or the use of Providence Station or any part thereof by Tenant, its officers, employees, agents, servants and invitees, provided that the foregoing release shall not apply to the negligence or willful misconduct of the Indemnified Parties.

With that digression aside, that brings us to a baseline rule requiring defense of all claims and an exception for the negligence belonging to Amtrak. In reading the Lease, it would not be natural or fair to apply the second definition of negligence— a tort claim. This would effectively read: Oakwells has to defend all claims against Amtrak except the negligence (tort) belonging to Amtrak. A negligence tort is possessed by the complaining party and brought *against* an offending party. As such, Oakwells attempts to supply a meaning that the words simply cannot bear.

Lastly, negligence, together with willful misconduct, comprises a list of two. No tort exists for willful misconduct; instead, it describes a type of conduct for a bevy of torts. For this reason, the *eiusdem generis* canon, too, favors employing the conduct definition of negligence.

■ The Court concludes that the plain language of this Lease requires Oakwells to defend all claims against Amtrak except when Amtrak commits negligence or willful misconduct. Therefore, the indemnity and defense provision does not, as Oakwells asserts, automatically exclude Ms. Lichman's claims of negligence against Amtrak.[5]

Before moving on to Count II, the Court briefly addresses one more issue that Oakwells raised for the first time in its Reply: whether Amtrak's claim for defense and indemnification is premature. In determining the applicability of a duty to defend, Rhode Island applies the common "pleading test." *Quality Concrete Corp. v. Travelers Prop. Cas. Co. of Am.*, 43 A.3d 16, 20 (R.I. 2012). "If the *pleadings* recite facts bringing the injury complained of within

the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff." *Id.* (quoting *Peerless Ins. Co. v. Viegas*, 667 A.2d 785, 787 (R.I. 1995)). Because Amtrak's Answer disclaims any negligence, Oakwells' duty to defend kicks in and does not cease unless and until Amtrak is found negligent. *See Shelby Ins. Co. v. Ne. Structures, Inc.*, 767 A.2d 75, 77 (R.I. 2001).

Oakwells' Motion for Summary Judgment regarding Count I is DENIED.

## B. Duty to Maintain Premises

■ Lastly, Oakwells has moved for summary judgment on Count II of Amtrak's Third-Party Complaint—contribution. The Contribution Count claims that Oakwells had a duty to maintain the leased premises, and therefore Oakwells is also liable for Ms. Lichman's Premise Liability Claim. Amtrak's Response did not address this part of Oakwells' Motion.

■ If the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R. Civ. P. 56(e); *see also Rivera–Torres v. Rey–Hernández*, 502 F.3d 7, 13 (1st Cir. 2007) (reminding courts that even an unopposed summary judgment motion should not be automatically granted). In these circumstances, "[t]he court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." *Cordero–Soto v. Island Fin., Inc.*, 418 F.3d 114, 118 (1st Cir. 2005) (alteration in original) (quoting *Lopez v. Corporación Azucarera de P.R.*, 938 F.2d

---

5. In order for Amtrak to be liable to Ms. Lichman, Amtrak must be adjudged negligent. But if Amtrak is negligent, then the exception applies, so no indemnification can be had. And if Amtrak is not negligent, then there is

no claim to be indemnified. The duty to indemnify, therefore, cannot be implicated. On the other hand, the duty to defend encompasses defense costs owed by Oakwells if Amtrak is not negligent.

1510, 1516 (1st Cir. 1991)); *accord De La Vega v. San Juan Star, Inc.*, 377 F.3d 111, 115–16 (1st Cir. 2004).

 Under Rhode Island law, it is a long-standing rule that "a possessor of land who leases a portion thereof and retains in his control any other portion that is used in common by his tenants owes to the tenants the duty to maintain the retained portion in a reasonably safe condition consistent with its prospective use." *Gormley v. Vartian*, 121 R.I. 770, 403 A.2d 256, 261 (1979). When an injury occurs on the commonly used portion of the premises, the duty runs from the landlord to the plaintiff, rather than from tenant to the plaintiff. *Id.* at 261–62. So it follows: Oakwells, as a tenant without possession or control over the common area, owed no duty to maintain that area. Accordingly, Oakwells, as a matter of law, could not have breached a duty to maintain the common area.

Oakwells' Motion for Summary Judgment for Count II is GRANTED.

## CONCLUSION

For the reasons set forth above, Amtrak's Motion for Summary Judgment is DENIED (ECF No. 22), Oakwells' Motion for Summary Judgment for Count I is DENIED (ECF No. 26), and Oakwells' Motion for Summary Judgment for Count II is GRANTED (ECF No. 26).

IT IS SO ORDERED.